25806. COMMERCIAL CASUALTY INSURANCE COMPANY *v.* CAMPBELL.

DECIDED NOVEMBER 16, 1936.

*John A. Dunaway, Bryan, Middlebrooks & Carter,* for plaintiff in error.

*King & Partridge,* contra.

STEPHENS, J. Fredia Campbell, as beneficiary, sued Commercial Casualty Insurance Company on a policy of insurance, copy being attached to the petition, which insured her husband against accident and disability resulting from illness, in consideration of a monthly premium, with the following provisions: " (a) No agent has authority to change this policy or to waive any of its provisions. No change in this policy shall be valid unless approved by an executive officer of the company and such approval be endorsed hereon. (b) If default be made in the payment of the agreed premium for this policy, the subsequent acceptance of a premium by the company or by any of its duly authorized agents, shall reinstate the policy, but only to cover accidental injury thereafter sustained and such sickness as may begin more than ten days after the date of such acceptance. (c) The company may cancel this policy at any time by written notice delivered to the insured or mailed to his last address as shown by the records of the company, together with cash or the company's check for the unearned portion of the premium actually paid by the insured, and such cancellation shall be without prejudice to any claim originating prior thereto. (d) This policy may be renewed subject to all of its provisions, with the consent of the company, by the payment of the premium in advance. If on any date to which insurance has been paid the policy has not been renewed, insurance shall cease without notice and the policy shall lapse, and neither the sending to the insured by the company or by any person of a lapse notice or a notice of a subsequent premium due, nor the acceptance by the company of payment for insurance for a subsequent period, shall constitute a waiver of such lapse or a renewal of the insurance for the lapsed period. The payment of a past-due premium shall not carry the insurance beyond the first day of the next month. The sending of lapse or other notices is a courtesy, not a requirement." The petition further alleged, as stated in the brief for the plaintiff in error, "that the insured, Carlos W. Campbell, paid a monthly premium on said policy up to and including May, 1935, and that the insurance company accepted and retained each of said premiums; that each of said monthly premiums was paid later than the first day of each month and usually between the 15th and 26th days of the month for which the premium was paid; that the practice of accepting premiums after the first day of each

month for such month constituted a waiver by the company of the requirements in the policy that the premium should be paid on the first day of each month in advance; that, relying upon the course of dealing between the company and himself, the said Carlos W. Campbell did at sometime between the 10th and 20th of June, 1935, tender to the defendant the sum of three and 65/100 ($3.65) dollars as premium for the month of June, 1935, and the company declined to accept the same; that the tender of the premium was a continuing tender and the refusal of the company to accept it kept the policy in force for the month of June, 1935, up until the first day of July, 1935; that on or about the 14th day of June, 1935, the insured, Carlos W. Campbell, suffered an accidental injury, from which he died on July 3, 1935;" and that the defendant refused to pay the amount due under the policy, which refusal was in bad faith; wherefore the plaintiff was damaged in a sum equal to one fourth of the amount due, and was entitled to recover reasonable attorney's fees.

The parts of the petition above recited were attacked by special demurrer contending that they were immaterial, irrelevant, and a conclusion of the pleader, not borne out by the facts alleged; that the alleged waiver was in conflict with the provisions of the policy above set out; that the tender of the premium which was declined by the company would not, in view of the fact that the policy is a term policy, cancellable at the will of either party, entitle the plaintiff to have the policy declared in force for an additional month beyond the period for which the premium had actually been paid. A general demurrer also was filed. The demurrers were overruled, and the defendant excepted.

The main and controlling point urged for the plaintiff in error is that the practice of the defendant in receiving premiums after their due date is referable to and consistent with the particular provisions of this policy, and especially the provision that the acceptance of a past-due premium should reinstate the policy, "but only to cover accidental injury thereafter sustained and such sickness as may begin more than ten days after the date of such acceptance." If this contention were sustained, the result would be that the company might allow payment of the premium on the next to last day of each month, in which case the insurance would be in force during only thirty-six days in three years, although the

company would have the right to collect and would collect the full amount of premiums for 1095 days. In the actual case before the court, assuming that the average day on which premiums were paid was the 20th day of the month (the allegation being that it was usually between the 15th and the 26th), it appears that the company received payment for fully three years, although the policy was in force for only one third of that time. If allowed, this would create a penalty of 200 per cent. in the cost of the insurance actually had. The argument is that the contract so provides. In reply it may be said that the whole of any contract may be abrogated by consent of the parties. It may be abandoned by their conduct as well as by express agreement. This being true, it is equally feasible for the parties to abrogate one or more parts of their contract. Counsel for the plaintiff in error "recognize the well-established rule that where there has been a general acceptance of overdue premiums, a custom has been established and the company waives the right to forfeit the policy in accordance with its terms," but take the position that "the general rule does not apply, because of the terms of the contract sued upon." This really begs the question, since it assumes that the provisions on which counsel rely were not affected by the facts alleged by the plaintiff as constituting a waiver. It is true that an intention to waive is necessary to a waiver. But the fact that the company received some thirty premiums, which were considerably overdue, without any intimation that the strict provisions of the policy would in future be applied, seems sufficient to bring this case within the provisions of the Code, § 20-116, as follows: "Where parties, in the course of the execution of a contract, depart from its terms and pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given the other of intention to rely on the exact terms of the agreement. Until such notice, the departure is a quasi new agreement."

It can not be held as a matter of law that a course of dealing such as is shown in the present case is insufficient to effect a waiver of the provisions relating to the payment of premiums. It seems more in accord with reason and the spirit of the decisions of this State to hold that under the facts alleged in this petition the usual rule as to waiver is applicable, rather than to hold that the

534

rule is wholly subverted by the provisions of this policy. A provision against waiver may itself be waived. *Adams* v. *Washington Fidelity National Insurance Co.*, 48 *Ga. App.* 753 (173 S. E. 247).

The special ground of demurrer to the paragraphs of the petition which set up a right to recover damages and attorney's fees was properly overruled. It is not necessary to allege any special facts as showing bad faith in the refusal to pay the policy, but this liability depends on the whole complexion of the case as shown to the jury who are to decide whether bad faith existed or not. The special demurrers were properly overruled. There is no merit in the general demurrer, and it was properly overruled.

*Judgment affirmed. Jenkins, P. J., and Sutton, J., concur.*

JENKINS, P. J. I concur in the conclusion arrived at by my colleagues in this case on account of the ruling of this court in *Adams* v. *Washington Fidelity National Insurance Co.*, 48 *Ga. App.* 753 (supra), in which case I filed a dissenting opinion.