26473. GUARANTY LIFE INSURANCE CO. *v.* PUGHSLEY.

*Anderson, Cann & Dunn, John R. Wilson,* for plaintiff in error.
*A. B. Conger,* contra.

MacIntyre, J. On October 15, 1934, the Guaranty Life Insurance Company, hereinafter referred to as the insurer, issued a policy of life insurance to Vivian Pughsley, naming Harry G. Pughsley, her husband, and plaintiff in the present suit, as beneficiary. The application, which was attached to and made a part of the contract, was dated September 14, 1934. On November 6, 1934, the insurer was operated on for a fibroid tumor and died on January 16, 1935, as the result of such condition. One of the questions contained in the application above referred to was as follows: "Do you suffer from any ovarian or uterine disease or menstrual disorder?" To which question the insured answered, "No." The insurer defended the present action on the ground that this statement was false, that the insured then and there, and prior thereto, was and had been suffering from an ovarian or uterine disease or menstrual disorder, to wit, fibroid tumor of her uterus. Without setting out the evidence it is sufficient to say that it overwhelmingly and conclusively showed that the representation was false and was material to the risk. "Where an applicant for life insurance covenants in his application that the statements made to the medical examiner are true, and these statements are made a part of the contract of insurance and form the basis of such contract, any variation in any of them, which is material, whereby the nature or extent or character of risk is changed, will avoid the policy, whether the statement was made in good faith or wilfully or fraudulently." *Supreme Conclave Knights of Damon* v. *Wood,* 120 *Ga.* 328 (47 S. E. 940).

The plaintiff contends, however, that the insurer waived the provisions contained in the policy authorizing forfeiture by reason of a false statement made in the application. In this connection it is first insisted that the agent who solicited the policy, and who filled out the application and delivered the same, knew or should have known of this condition of the insured at the time of the

solicitation and issuance of the policy. It is true that the evidence would warrant the finding that such agent had knowledge of the physical condition of the insured for which the insurer now seeks to avoid the policy. "Where there was no limitation upon the agent's authority in an antecedent application, and where the agent was thus acting within the apparent scope of his authority in the preliminary negotiations . . 'conditions which enter into the validity of a contract of insurance at its inception may be waived by the agent, and are waived if so intended, although they remain in the policy when delivered, and limitations therein upon the authority of the agent to waive such conditions otherwise than in writing attached to or indorsed upon the policy are treated as referring to waivers made subsequently to the issuance of the policy.'" *National Accident & Health Ins. Co.* v. *Davis,* 179 *Ga.* 595 (176 S. E. 387). "The principle stated . . should not be applied where to do so would be contrary to limitations upon the authority of the agent as expressed in an application attached to and made a part of the policy." *Davis* case, supra. The application in the present case contains the following provision: "That only the president of the company can make, modify or discharge contracts or waive any of the company's rights or requirements and any such modification, discharge or waiver shall be in writing over the signature of said officer and that none of these acts can be done by the agent taking this application." It is therefore apparent that knowledge of such agent would not constitute a waiver of the conditions of the policy. It further appears that the insurer, before issuing the policy sued on, issued to the insured a policy of health and accident insurance; that after her operation, and each week during her confinement and up to the time of her death, the insurer accepted and paid claims made by the insured under the health and accident policy, the doctor's report containing the statement that insured had had "operation for tumor," and "operation—abdominal;" and that after receipt and payment of these claims, the insurer demanded of and accepted from the insured a premium due on the policy sued on. The medical director, Dr. Bryant, testified in this connection: "The first one of the claims, that is November 6, 1934, diagnosed the same as tumor operation, and Dr. Chason on November 13, 1934, and another one the next week, November 23, 1934, said

operation for tumor, and Dr. Chason on November 30, and December 4, 1934, diagnosed the illness as operation for tumor. There is another one dated December 12, operation for tumor; December 21, operation for tumor; and December 28, 1934, another operation for tumor. On January 4, 1935, operation for tumor. There is another sick claim January 12, Dr. Chason showing diagnosed 'operation.' Vivian Pughsley died January 16, 1935. . . Yes, sir, in designating the disease or trouble of tumor there is more than one kind of tumor; no, sir, the sick claims would not indicate that it was a fibroid tumor. Yes, sir, a fibroid tumor in medical insurance applications is regarded very grave for the reason that if it is there for a long time it may turn into a cancer, or by its weight it may cause pressure on certain nerves and cause high blood pressure and cause a patient to fall with a stroke of apoplexy, or may cause pressure on certain vessels or nerves leading to the stomach and produce different symptoms of gastritis, and many other things, and this company's policy is that the applicant suffering from a fibroid tumor is not acceptable as a member of the Guaranty Life Insurance Company until two years after a successful operation for its removal."

While it is true that where an insurer has *knowledge of facts entitling it to treat a policy as no longer in force,* and thereafter receives a premium on the policy, it is estopped to take advantage of the forfeiture, it can not treat the policy as avoided for the purpose of defenses in an action to recover for losses after occurring, and at the same time treat it as valid for the purpose of earning and receiving the premium. 14 R. C. L. 1090, § 367; *Williams* v. *Empire Mutual Annuity &c. Ins. Co.,* 8 *Ga. App.* 303 (68 S. E. 1082); *German American Mutual Life Asso.* v. *Farley,* 102 *Ga.* 720 (29 S. E. 615); *Sovereign Camp Woodmen of the World* v. *Bowman,* 40 *Ga. App.* 536 (159 S. E. 436). The evidence in the present case is not sufficient to bring the case within the operation of the above ruling. It does not appear from the evidence that the insurer, through its examiner, had actual knowledge that the answer of the insured in her application that she did not "suffer from any ovarian or uterine disease or menstrual disorder," was false. At best it was merely constructive notice of facts authorizing it to forfeit the policy. It was not such knowledge that would effect a waiver of the conditions of the policy.

For the reasons above stated we are of the opinion that the trial judge erred in overruling the motion for new trial on the general grounds. The remaining headnotes require no elaboration.

*Judgment reversed. Broyles, C. J., and Guerry, J., concur.*