## 58519. STATE FARM FIRE & CASUALTY COMPANY v. MILLS PLUMBING COMPANY, INC. et al.

CARLEY, Judge.

In October of 1972, Mills Plumbing Company, a partnership, secured insurance coverage from the appellant-insurer. In April of 1973, the partnership was incorporated and the appellee came into existence. Apparently there was no formal notification to the insurer of the incorporation, though premium payments were thereafter made in the form of checks drawn on the new corporate account. In November of 1973, at the behest of the insurer, an audit of the appellee was made to determine whether or not its premiums should be adjusted. This audit, which was conducted for the insurer by an independent agency, revealed that the incorporation had resulted in several changes which might affect the determination of appellee's future premiums. These changes were reflected on the audit work sheets which, while not directly indicating that figures were based upon the fact of incorporation, clearly designated that the audit had been conducted on a corporate entity. The work sheets were submitted to the insurer where they were reviewed and became the basis for an upward adjustment of the appellee's premiums. No further change was made by the insurer, nor any requested by the appellee, with regard to coverage and at all times the policy and documents issued pursuant thereto referred to the partnership as the insured.

On January 31, 1974, a fire occurred in two buildings in which the appellee's employees were working. The appellee gave no notice of the fire to the insurer. On April 1, 1974, the appellee and the insurer were advised by a

letter from the General Adjusting Bureau (GAB) that the fire was under investigation and that a possible claim against the appellee based on the negligence of its employees existed. The insurer thereupon secured a non-waiver from the appellee and began its own investigation. It determined that, due to the interval between the fire and notice, a proper and careful investigation was impossible and denied coverage under the policy because of the appellee's failure to give "notice as soon as practicable of the occurrence or the accident."

Suit was subsequently filed against the appellee based on the alleged negligence of the employees in causing the fire. That case went into default and judgment was entered against appellee. Suit was instituted in the instant case to determine the liability of the insurer on the policy. From a verdict and judgment in favor of the appellee and against the insurer, this appeal is taken.

1. The insurance policy here in issue contains the following provisions: "8. *Changes:* Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy. 9. *Assignment:* Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon . . ."

It is urged that, there being no compliance with these provisions, the appellee cannot bring suit on a policy issued not to it but, rather, to the partnership which no longer exists. " 'The general rule is that: "An action on a policy of insurance — or on a written binder — must be brought in the name of the holder of the legal title thereto." [Cit.] "Generally, 'one other than the person to whom it was issued can not, in his own name, maintain an action thereon, unless the policy has been duly assigned to him in writing.' " [Cit.] ' [Cit.]" *U. S. Homes Assistance Corp. v. Southern Guaranty Ins. Co.,* 131 Ga. App. 676, 678 (206 SE2d 555) (1974).

Provisions in insurance policies, such as those here involved, that no change in the terms or coverage afforded

by the policy shall be made except by endorsement issued to form a part of the policy, and that no knowledge possessed by an agent shall effect a waiver or estop the insurer from asserting any right under the policy, are valid and binding. *Hawkins Iron & Metal Co. v. Continental Ins. Co.,* 128 Ga. App. 462, 465 (196 SE2d 903) (1973). The insurer can, however, under certain circumstances, impliedly waive strict adherence to these provisions. *South Carolina Ins. Co. v. Hunnicutt,* 105 Ga. App. 257, 259 (124 SE2d 315) (1962). We find no Georgia case which applies the "implied waiver" theory so as to estop an insurer from setting forth the lack of written endorsement on the policy in defense of its decision not to afford coverage to an assignee of the policy. It is, however, a general proposition that " '[a]ny provision of a policy made for the company's benefit may be waived by the company either expressly or impliedly by the company's action.' [Cits]" *American Home &c. Ins. Co. v. Harvey,* 99 Ga. App. 582, 583 (109 SE2d 322) (1959). Provisions which require the consent of the insurer to an assignment of the policy are clearly for the insurer's benefit — such assignments change the risk which the insurer has assumed under the terms of the policy. *Langley v. Pacific Indemnity Co.,* 135 Ga. App. 29, 30 (4) (217 SE2d 369) (1975). We, therefore, see no reason why the assignee of a policy may not recover upon demonstrating that the insurer has, by its actions rather than its written endorsement, "consented" to the assignment and is thereby estopped to deny coverage to the assignee.

The evidence shows that the named insured, the partnership, was engaged in the plumbing business and that after incorporation, the plumbing business continued in operation in the same manner, except with respect to the type of legal entity through which it was being pursued, the former partners each holding one-half of the stock of the new corporation. Although the change in the capacity of the named insured resulted in the creation of a new and distinct entity, it did not, in the strictest sense of the word, introduce a "stranger" to the risks insured against under the policy. See, e.g., *Ga. Home Ins. Co. v. Hall & Peddinghaus,* 94 Ga. 630 (21 SE 828) (1894); *Peoples &c. Fire Assn. v. Wyatt,* 31 Ga. App. 684

(121 SE 708) (1924); *Universal American Life Ins. Co. v. Finance Corp.,* 118 Ga. App. 160 (162 SE2d 813) (1968). After incorporation, during an audit conducted at the instigation of the insurer, the fact of the incorporation of the named insured subsequent to the issuance of the policy was discovered. This audit established that the change in the nature of the entity had resulted in changes in business operations which would be relevant in determination of premiums. The results of this audit were sent to the insurer and served as the basis for the insurer's decision to increase the premium due on the policy. Thus the insurer *itself* was aware of any change in the risk which resulted from the named insured's change in capacity and made its adjustments accordingly. Compare, e.g., *Fields v. Continental Ins. Co.,* 170 Ga. 28 (152 SE 60) (1930). The corporation paid the increased premiums which the insurer had determined were due it for the risk it had agreed to assume. Compare *Mitchiner v. Union Central Life Ins. Co.,* 185 Ga. 194 (194 SE 530) (1937). The insurer accepted, in payment for its increased risk, the checks of the corporation. Compare *Cutright v. Nat. Union Fire Ins. Co.,* 65 Ga. App. 173 (15 SE2d 540) (1941). After its determination that the corporation was not afforded coverage under the policy, the insurer did not refund the payment made by the corporation for the premiums. Compare, e.g., *U. S. Homes Assistance Corp. v. Southern Guaranty Ins. Co.,* 131 Ga. App. 676, supra.

Under these circumstances it cannot be said, as a matter of law, that the insurer has not "consented" to the assignment of the policy by the partnership to the corporation or that the insurer has not, by its actions, waived the policy requirement that assignments be endorsed on the face of the policy. When the insurer received the audit report, it knew or should have known that the partnership had been replaced by the corporation. At that point, the insurer chose not to treat the policy as no longer in force, but, rather increased the premiums due thereunder, for reasons based upon the fact of that incorporation.

"[W]here an insurer has knowledge of facts entitling it to treat a policy as no longer in force, and thereafter receives a premium on the policy, it is estopped to take

advantage of the forfeiture, it can not treat the policy as avoided for the purpose of defenses in an action to recover for losses after occurring, and at the same time treat it as valid for the purpose of earning and receiving the premium." *Guaranty Life Ins. Co. v. Pughsley,* 57 Ga. App. 588, 591 (196 SE 265) (1938). " '[E]stoppel is the shield of justice interposed for the protection of those who have not been wise enough or strong enough to protect themselves. It is the special grace of the court, authorized and permitted to preserve equities that would otherwise be sacrificed to cunning and fraud.' [Cit.] When an insurer with full knowledge of the provisions of his policy and equally full information as to the existence of a situation surrounding the insured, by reason of which it will be probable, if not indeed certain, that the insured will pay and the insurer will receive a premium, the writing of a policy would be a fraud unless it were presumed that the policy would be paid in the event of a loss to the insured, regardless of any provision applicable to those circumstances which the insurer knew, affecting the rights of the opposite party under the contract. Good faith would require it. Equity would demand it." *Brown v. Globe &c. Fire Ins. Co.,* 161 Ga. 849, 853 (133 SE 260) (1926). "[P]rovisions in the policy of insurance requiring all waivers shall be in writing do not apply where, as in the instant case, the insurer itself has knowledge of the facts creating the exclusion and, with such knowledge, accepts and retains increased premiums owed to it only in the event the exclusion is not effective. This amounts to an implied waiver of the provisions of such exclusion. [Cits.]" *South Carolina Ins. Co. v. Hunnicutt,* 105 Ga. App. 257, 259, supra. See also *Commercial Cas. Ins. Co. v. Campbell,* 54 Ga. App. 530, 534 (188 SE 362) (1936).

In so holding we are not unaware of those cases, a list of which is too long to cite, which require that the assignment of an insurance policy must *itself* be in writing. Apparently there was no such written assignment of the policy here in issue from the partnership to the appellee. We note, however, that the requirement of a written assignment of the policy is not an absolute. See, e.g., *Peoples &c. Fire Assn. v. Wyatt,* 31 Ga. App. 684, supra; *Universal American Life Ins. Co. v.*

*Finance Corp.,* 118 Ga. App. 160, supra; *Imperial Enterprises, Inc. v. Fireman's Fund Ins. Co.,* 535 F2d 287 (5th Cir. 1976). We are also cognizant of language, apparently dicta, in *Fields v. Continental Ins. Co.,* 170 Ga. 28 (2c), supra, to the effect that the doctrine of estoppel may not be invoked to avoid the necessity of a written transfer of the policy. The ground for estoppel urged in *Fields* was the failure of the insurer's *agents* to perform a *promise* of *future* actions to effectuate a change in the named insured pursuant to an unwritten assignment of the policy.

We do not believe, however, that such a rule has application in the instant case where the very ground for estopping the insurer's denial of coverage is that the insurer *itself* has, by its own *past actions,* elected to treat the corporation as the assignee of the policy and has enjoyed the benefits of that election, in the form of higher premiums received from the corporation and retained by the insurer. Under such circumstances, the assignee does not stand, as did the plaintiff in *Fields,* as a stranger to either the insurer or to the policy upon which he seeks to recover. Under such circumstances the assignee of the policy is, for all practical purposes and insofar as the insurer is concerned, the "true owner" of the policy, a status which the insurer would be estopped to deny. *Volunteer State Life Ins. Co. v. Buchannan,* 10 Ga. App. 255 (73 SE 602) (1912). Indeed, to hold that, under such circumstances, the insurer *cannot* be estopped to contest the formalities of the underlying assignment would serve no purpose except to afford the insurer relief from its own voluntary election to treat the appellee as the assignee of the contract. This would have the anomolous result of applying the doctrine of estoppel so as to punish the innocent party for its justifiable reliance upon the actions and deeds of the insurer which evidenced an unqualified acceptance of the obligation to insure against the risks inherent in that innocent party's status and capacity. We decline to apply the doctrine of estoppel in such a manner. Where an insurer has, by its own conduct and actions, consistently demonstrated a decision to regard a policy as assigned and to treat one, other than the named insured, as the assignee thereof and has thereby waived its own

requirement, as between itself and that party, that the assignment be in writing, the insurer has "consented" to the assignment and may not avoid its obligations thereunder by urging the lack of a formal written assignment between the assignee and assignor.

2. The insurer urges that the appellee sought, and was granted, reformation of the contract, an equitable remedy not within the jurisdiction of the State Court of DeKalb County. Resolution of the substantive issues on this appeal, as discussed in Division 1 of this opinion, involve waiver and estoppel, not reformation of a contract. This enumeration is meritless. *Hood v. Duren,* 33 Ga. App. 203 (2) (125 SE 787) (1924).

3. The policy contained the following provision: "4. Insured's Duties in the Event of Occurrence, Claim or Suit: (a) In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable..." The insurer urges that, as a matter of law, the appellee did not give notice of the fire "as soon as practicable" and that coverage, which was predicated upon the insured's full compliance with all policy terms, was properly refused. We do not agree.

The "occurrence" upon which the appellee's liability was ultimately found to exist was a fire, in a building under construction. While the appellee's employees had been present at the site, the evidence showed that other workers had also been engaged there on the date of the fire. Apparently the appellee's employees had left the building approximately an hour before the fire was discovered. There was evidence that the insurer and the appellee both received substantial notice that the fire might be linked to the appellee's employees at the same time — receipt of the letter from GAB some seven weeks after the fire. Under these facts, a jury question was presented as to the appellee's compliance with the policy's notification requirement. *Norfolk &c. Fire Ins. Co. v. Cumbaa,* 128 Ga. App. 196, 198 (2) (196 SE2d 167) (1973);

*State Farm Mut. Auto. Ins. Co. v. Sloan,* 150 Ga. App. 464 (258 SE2d 146) (1979). Compare *Erber v. Ins. Co. of N. A.,* 134 Ga. App. 632 (215 SE2d 528) (1975) (knowledge of claim nine months after accident not reported until fourteen additional months later); *Richmond v. Ga. Farm Bureau Mut. Ins. Co.,* 140 Ga. App. 215 (231 SE2d 245) (1976) (insurer not notified until eight months after insured had substantial notice of his liability). It was not error to submit the question of the appellee's compliance with the notice provision to the jury and the evidence supports the finding that there was compliance. There was no error.

4. The insurer argues that the bad faith penalties and attorney fees awarded to the appellee by the jury are not recoverable. "[W]e disapprove the rule that a finding of bad faith is not authorized if the evidence would have supported a verdict in accordance with contentions of the [insurer]. This is an 'any evidence' rule being used to reverse a judgment. Such a rule virtually precludes a finding of bad faith and allows unreasonable defenses to delay payment with impunity. The proper rule is that the judgment should be affirmed if there is any evidence to support it unless it can be said as a matter of law that there was a reasonable defense which vindicates the good faith of the insurer." *Colonial Life &c. Ins. Co. v. McClain,* 243 Ga. 263, 265 (253 SE2d 745) (1979).

"The Supreme Court's clarification of the rule of law applicable to appellate review of a verdict such as the one now before us demonstrates unequivocally that the issue was properly submitted to the jury since, under the facts of this case, it cannot be said 'as a matter of law that there was a reasonable defense which vindicates the good faith of the insurer.' " *Colonial Life &c. Ins. Co. v. McClain,* 150 Ga. App. 883, 886 (258 SE2d 655) (1979). Accordingly, it was not error to deny the insurer's motions for directed verdict and judgment notwithstanding the verdict on the issue of bad faith and attorney fees.

*Judgment affirmed. Deen, C. J., and Shulman, J., concur.*

ARGUED SEPTEMBER 6, 1979 — DECIDED NOVEMBER 26, 1979 —

*Frank J. Klosik, Jr., Michael L. Wetzel,* for appellant.
*Gene Burkett, Eugene O'Brien,* for appellees.