**Sammie S. HARPER, Plaintiff,**

v.

**LIBERTY NATIONAL LIFE INSURANCE COMPANY,**
**Defendant.**

**Civ. A. No. 84–77–VAL (WDO).**

United States District Court,
M.D. Georgia,
Valdosta Division.

Oct. 16, 1986.

---

Liberty to Ms. Harper covered Bertie W. Harper, III's death.

Kathy D. Hackel, Homerville, Ga., for plaintiff.

F. Thomas Young, Valdosta, Ga., for defendant.

### ORDER

OWENS, Chief Judge.

The present case stems from the refusal of defendant Liberty National Life Insurance Company (Liberty) to pay plaintiff Sammie S. Harper life insurance benefits as a result of her son's death. Presently before the court are the parties' cross-motions for summary judgment. Jurisdiction is based upon diversity of citizenship. 28 U.S.C. § 1332.

On a motion for summary judgment the party seeking summary judgment bears the exacting burden of demonstrating that there is no actual dispute as to any material fact in the case. In determining whether the moving party has met this burden, this court should review the evidence and all factual inferences in the light most favorable to the party opposing the motion. *East Park, Inc. v. Federal Insurance Company,* 794 F.2d 616, 618 (11th Cir. 1986).

### Facts

Ms. Harper's husband initially applied for and received a life insurance policy with Liberty which covered both Ms. Harper and her husband. Subsequently, the original policy of insurance was amended to include a juvenile term rider. This amendment provided life insurance for Ms. Harper's five children.

On February 10, 1983, Bertie W. Harper, III, one of Ms. Harper's five children, died in an accident. Bertie W. Harper, III was born on February 17, 1960 and at the time of his death he was twenty-two (22) years old. The issue presented in these motions is whether the policy of insurance issued by

### The Policy of Insurance

The juvenile term rider included in Ms. Harper's policy read in relevant part:

### TERM LIFE INSURANCE BENEFITS

Upon receipt at its Home Office of due proof of the death of each Eligible Child as defined herein while this Supplementary Agreement is in force and before the Expiry Date, the Company will pay to the Owner of the Policy the Amount of Benefit shown in the schedule above. However, if the Eligible Child is less than two months of age at death, the Amount of Benefit under this Supplementary Agreement shall be $250.00 for each $1,000 of Amount of Benefit shown in the schedule above. *Such insurance is term insurance and expires as to each such Eligible Child on the policy anniversary nearest said Eligible Child's twenty-third birthday or on the Expiry Date in the schedule above, whichever is earlier.*

### ADDITIONAL BENEFIT FOR ACCIDENTAL DEATH

Upon receipt at its Home Office of due proof that the death of any Eligible Child as defined herein resulted, directly and independently of all other causes, from bodily injury effected solely through external, violent and accidental means ... while this Supplementary Agreement is in force and before the Expiry Date, and that death occurred within ninety days from the date of such injury, the Company will pay to the Owner, in addition to the Term Life Insurance Benefit, an additional amount equal to the amount payable under the Term Life Insurance Benefit provision. *This additional Benefit for Accidental Death coverage is also term coverage and expires as to each such Eligible Child on the policy anniversary nearest said Eligible Child's twenty-third birthday or on the Expiry*

*Date in the schedule above, whichever is earlier.*

(emphasis added). The "Expiry Date" provided for in the policy is uncontroverted as being October 20, 1987. The "Effective Date" of the policy is also uncontroverted as being October 20, 1966. The only other relevant provision for purposes of deciding the parties' motions is the clause in the policy that states:

[t]he insurance provided by this Policy begins on the Effective Date provided the first premium has been paid. The first premium is due on such Effective Date of the Policy and is payable in advance. Thereafter premiums are payable periodically for the period shown above. The due dates of subsequent premiums shall be computed from the Effective Date, and the amounts and frequency of payment of such premiums shall be as shown in the schedule above. The policy years and *policy anniversaries shall be computed from the Effective Date.*

(emphasis added).

### Defendant's Motion for Summary Judgment

■ Liberty argues that the coverage on Bertie W. Harper, III's life lapsed prior to his death. It claims that the provision, "[s]uch insurance is term insurance and expires as to each such Eligible Child on the policy anniversary nearest said Eligible Child's twenty-third birthday or on the Expiry Date in the schedule above, whichever is earlier" requires this court to find that the policy of insurance lapsed on October 20, 1982, the policy anniversary which preceded his death. Ms. Harper, on the other hand, contends that this provision is ambiguous as to when the policy would lapse, and, therefore, it should be construed against the insurance company. Ms. Harper asks this court to interpret the policy of insurance as providing coverage on Bertie W. Harper, III's life up until his twenty-third birthday. In order to decide this is-

sue, the court must look to the applicable state law on this subject.

Under Georgia law, the construction of a contract is a matter of law for the court as is the determination *vel non* of ambiguity in a contract. *See Jones v. Barnes,* 170 Ga.App. 762, 765, 318 S.E.2d 164, 167 (1984). Where the language of a contract is plain and unambiguous, however, no construction by the court is required or even permissible. *Id.* at 765, 318 S.E.2d at 167. In determining whether there is an ambiguity, words employed in the policy are to be taken and understood in their plain, ordinary, usual and popular sense. *Continental Casualty Co. v. Robertson,* 245 F.2d 604 (5th Cir.1957). With this law in mind, the court must determine whether the phrase, "[s]uch insurance is term insurance and expires as to each such Eligible Child on the policy anniversary nearest said Eligible Child's twenty-third birthday or on the Expiry Date in the schedule above, whichever is earlier" is ambiguous as to when the policy lapsed.

It is clear from the policy that "or on the Expiry Date in the schedule above" refers to October 20, 1987. The policy under no circumstances, therefore, would last longer than this date. Determination of the earlier expiration date requires defining the term "policy anniversary." "Anniversary" has been defined as being "the annual recurrence of a date marking an event or occurrence of notable importance." *See Webster's Third New International Dictionary* 87 (16th ed. 1971). Accordingly, an anniversary occurs once every year at the same time. The policy sets this date by the provision which states, "[t]he policy years and policy anniversaries shall be computed from the effective date." Since the effective date was October 20, 1966, the policy anniversary would occur annually on October 20th.[1] Having determined when the policy anniversaries occur, the final element required to be decided is whether "the policy anniversary nearest said Eligible Child's twenty-third birthday"

---

1. *See Robertson v. Southland Life Insurance Co.,* 130 Ga.App. 807, 204 S.E.2d 505 (1974), in

which similar language was found unambiguous.

can be read as including only the policy anniversary occurring after the Eligible Child's twenty-third birthday.

The term "nearest" has been defined as "being the closer of two." *Webster's Third New International Dictionary* 1510 (16th ed. 1971). This term, therefore, necessarily requires that there be two potential anniversaries to choose from. Accordingly, the policy anniversary prior to Bertie W. Harper, III's twenty-third birthday and the policy anniversary following this birthday must be used in order to ascertain which of these two dates is nearest to his twenty-third birthday. To adopt Ms. Harper's construction of this provision would be contrary to the plain meaning of the terms used. This court finds, therefore, that this provision is subject to only one interpretation, and, accordingly, is not ambiguous as a matter of law. Under the express terms of the policy, the coverage provided Bertie W. Harper, III expired on October 20, 1982, this being the policy anniversary nearest to the insured's twenty-third birthday.

■ Plaintiff contends that even if this provision was unambiguous, the policy of insurance had been modified or amended by Liberty's agent prior to the expiration of the coverage. Liberty's agent allegedly represented to Ms. Harper that her policy covered her son's life until he was twenty-three. Because of this representation, plaintiff asserts that the policy was modified to extend coverage until Bertie W. Harper, III's twenty-third birthday. Liberty concedes, for purposes of its summary judgment motion, that such representations were made to Ms. Harper. Liberty takes the position, however, that these statements by themselves are inadequate as a

matter of law to work a modification of the policy.

It is well established in Georgia that the conduct or action of an insurer, or its agent, cannot be used to create an implied waiver or estoppel argument where such a waiver or estoppel would bring within the coverage of a policy risks not covered by its terms or risks expressly excluded therefrom. *See Sargent v. Allstate Insurance Co.,* 165 Ga.App. 863, 865, 303 S.E.2d 43, 45–46 (1983). Extension of the applicable period during which the insurance was in force would certainly increase the risks covered by the terms of the policy.[2] Since Georgia law does not allow waiver or estoppel to increase the risks insured under an express policy of insurance, this court must conclude that Ms. Harper is foreclosed from arguing that the agent's representations estop Liberty from asserting that the policy expired on October 20, 1982, as provided for in the policy of insurance.

■ Ms. Harper cites to another line of cases in Georgia that purportedly would hold Liberty responsible for its agent's representations, and, accordingly, liable to Ms. Harper for life insurance benefits. These cases hold that a principal is liable for the acts of its agent if it clothes that agent with apparent authority to bind the principal. *See Home Materials Inc. v. Auto Owners Insurance Co.,* 250 Ga. 599, 300 S.E.2d 139 (1983). Where such apparent authority is present, an estoppel is worked against the principal to deny the agent's authority if it appears that the third party dealt with the agent in reliance upon the authority apparently conferred upon it by the principal. *Id.* at 601, 300 S.E.2d at 141–42. This doctrine rests upon the prin-

---

2. In *Sargent,* the Georgia Court of Appeals discussed the issue of when an implied waiver or estoppel argument could be used. It found that these doctrines are available only when the alleged waiver relates to a provision inserted for the insurer's benefit or when it relates to a condition or limitation in the policy upon which the insurer could otherwise rely. 165 Ga.App. at 865, 303 S.E.2d at 45–46. Examples of when waiver and estoppel have been allowed include: *conditions as to title or ownership; conditions* as to pre-existing health conditions; conditions concerning location of insured cars; conditions requiring proof of loss; conditions requiring timely written notice; exclusion based on age; requirement of insurer's consent to assignment; and requirement that all waivers be in writing. *Id.* at 865–66, 303 S.E.2d at 46. Based upon these cases it is clear that increasing the length of coverage under the policy would constitute more than waiving of a mere condition or limitation in the policy.

cipal that where one of two innocent parties must suffer, the one who places another in a position to cause the loss must be held responsible. *Atlanta Limousine Airport Services, Inc. v. Rinker*, 160 Ga.App. 494, 287 S.E.2d 395 (1981). Georgia case law makes it clear, however, that this doctrine cannot be invoked by a party who knew or who had good reason to know the limits and extent of the agent's authority. In this situation, the rule is that any apparent authority that might otherwise exist vanishes in the presence of the third person's actual or constructive knowledge of what the agent is or is not empowered to do. *Id.* at 496, 287 S.E.2d at 397-98. Ms. Harper argues that Liberty's agent modified the policy of insurance in this case to extend the coverage until Bertie W. Harper, III's twenty-third birthday. She contends that since the agent had apparent authority to make such a modification, Liberty is estopped to deny this authority, and, therefore, Bertie W. Harper, III was still covered by this policy of insurance at the time of his death. The question this court must answer, then, is whether Ms. Harper had actual or constructive knowledge that the agent could not modify this policy of life insurance.

Georgia law imposes a duty upon an insured to read the policy of insurance issued to her. *Barnes v. Mangham*, 153 Ga.App. 540, 265 S.E.2d 867 (1980). Accordingly, the insured has constructive knowledge of all the terms of the policy. The policy of insurance in this case specifically provided:

> 6. **Modifications of Policy**—No person except the President, a Vice-President, an Assistant Vice-President, the Secretary or an Assistant Secretary of the Company has power on behalf of the Company to bind the Company by making any promises respecting benefits or accepting any representations or information not contained in the written application for this Policy or to change, modify or waive the provisions of this Policy or to extend the time for payment of a premium or to waive any lapse or forfeiture or any of the Company's rights or

requirements, and evidence of any such action on the part of such officer must be in writing.

These types of provisions requiring a written modification have been held valid and binding in Georgia. *See State Farm Fire & Casualty Co. v. Mills Plumbing Company, Inc.*, 152 Ga.App. 531, 532-33, 263 S.E.2d 270, 272 (1979); and *Hawkins Iron & Metal Co. Inc., v. Continental Insurance Co.*, 128 Ga.App. 462, 465, 196 S.E.2d 903, 905 (1973). Ms. Harper had constructive knowledge, therefore, that the agent herein did not have authority to make modifications to the policy since the policy expressly provided that only the President, Vice-President, Assistant Vice-President, Secretary, or the Assistant Secretary had such authority. Ms. Harper also had constructive knowledge that all modifications had to be in writing.

Ms. Harper contends, however, that Liberty impliedly waived these provisions in the past when it allegedly adopted amendments to the policy solely upon the authorization of the agent. This court notes that an insurer can under certain circumstances impliedly waive strict adherence to a provision in a contract that requires a written modification by a certain officer. *State Farm Fire & Casualty Co.*, 152 Ga.App. at 533, 263 S.E.2d at 272. If such a waiver, in fact, occurred, then Ms. Harper might be entitled to an apparent authority doctrine argument. Ms. Harper's evidence fails as a matter of law, however, to show such a waiver.

While Ms. Harper has presented evidence of two alleged modifications to the policy that do not bear the appropriate officer's signatures, she has presented no evidence that Liberty adopted these modifications, *i.e.*, by reducing or increasing the premiums under the policy. There is evidence, however, that at least once when coverage under the policy was increased, an authorized signature was obtained before the modification became effective. Assuming that Ms. Harper could demonstrate that these two alleged modifications to the policy were effectuated without the required

signatures, this might make it reasonable to believe that the agent could authorize modifications to the policy in spite of the express contractual provision to the contrary. These alleged modifications, however, were in writing, included both the agent's signature and the insured's signature, and were dated. These facts lead to the conclusion that even if the requirement that certain officers' signatures be obtained to effect a modification to the policy had been waived, the requirement that such a modification be in writing had not been waived. It was, therefore, unreasonable to believe that the agent could make an oral modification to the policy. The apparent authority doctrine, accordingly, is unavailable to Ms. Harper as a matter of law.[3]

Not only does Ms. Harper's evidence fail to show that Liberty waived the provision requiring modifications to be in writing, it utterly fails to show that the agent and Ms. Harper intended to modify the policy in the first place. Ms. Harper contends that the agent represented to her that each of her children were covered until they attained the age of twenty-three. The evidence is uncontroverted that when the agent made those statements he was referring to the existing policy of insurance, not to any proposed modification. In fact, all the evidence shows is that the agent was merely explaining the coverage under the policy. The agent's statements that he believed the children to be covered until their twenty-third birthdays were mere legal conclusions about what the policy covered and, as such, do not effect the coverage provided for in the policy. *See Sasser v. Coastal States Life Insurance Co.*, 113 Ga.App. 17, 21–22, 147 S.E.2d 5, 7 (1966). These unauthorized statements of the agent cannot bind Liberty until such time as they are ratified by it. *See Higgins v. D. & F. Electric Co.*, 110 Ga.App. 790, 140 S.E.2d 99 (1964); and *Klingbeil v. Renbaum*, 146 Ga.App. 591,

246 S.E.2d 698 (1978). Ms. Harper has sought no formal discovery from either the agent or Liberty in this case. Any potential evidence that Liberty knew of these statements or caused them to be made, *i.e.*, through training seminars, which might constitute ratification on the part of the insurer, has been lost by inaction.

This court, therefore, finds that the policy of life insurance issued to Ms. Harper was unambiguous as to when the coverage on her son lapsed. Because it was unambiguous, she had a duty to read the policy, observe what coverage it provided for, and if the coverage was wrong, reject it when tendered, or alternatively, renegotiate the contract. *Barnes*, 153 Ga.App. at 540, 265 S.E.2d at 868 (1980). Since she failed to do this, Ms. Harper is foreclosed from arguing that the policy did not lapse on October 20, 1982. In addition, the agent's statements that the policy continued in force until her son's twenty-third birthday cannot be used to estop Liberty from asserting the policy expiration date contained in the contract of insurance. Furthermore, Ms. Harper is unable to argue that the agent modified the policy to increase the length of coverage because she had constructive knowledge that modifications to the policy had to be made in writing and signed by an authorized officer. Absent a showing that Liberty ratified their agent's unauthorized statements, the express provisions of the contract of insurance control. Accordingly, Liberty's motion for summary judgment is hereby GRANTED on its liability to Ms. Harper under the policy of life insurance, and Ms. Harper's motion for summary judgment is hereby DENIED.

---

3. Furthermore, the fact that Ms. Harper wrote down on her copy of the policy the agent's representations would not constitute a writing signed by the agent upon which she could rely. This conclusion is buttressed by the fact that contracts of insurance in Georgia must be in writing. *See Hawkins Iron & Metal Co., Inc.*, 128 Ga.App. at 464, 196 S.E.2d at 905, and cases cited therein.