**GYMCO CONSTRUCTION COMPANY, INC., Plaintiff–Appellee,**

**v.**

**ARCHITECTURAL GLASS & WINDOWS, INC., Defendant–Appellant.**

**No. 88–8605.**

United States Court of Appeals, Eleventh Circuit.

Sept. 29, 1989.

---

Peter R. Weisz, Robinson & Weisz, Robert C. Port, Atlanta, Ga., for defendant-appellant.

Geoffrey H. Cederholm, Alston & Bird, Atlanta, Ga., for plaintiff-appellee.

Before HILL and COX, Circuit Judges, and SNEED *, Senior Circuit Judge.

PER CURIAM:

Architectural Glass & Windows (AGW) appeals the district court's award of damages to Gymco Construction Company (Gymco), on the grounds that AGW breached its contract by failing to install materials for a building façade. We reverse the award of damages to Gymco, and remand for consideration of AGW's counterclaim.

## I.

### FACTS AND PROCEEDINGS BELOW

Gymco was the general contractor for the construction of an exercise salon in Atlanta, Georgia. One of its numerous subcontractors was AGW. On February 21, 1985, the two parties contracted for the installation of a mirrored glass façade, as well as other glass fixtures, for the building. This contract was in writing and executed by the respective presidents of each company. The contract required AGW to complete its work by May 7, 1985, subject to the receipt of approved shop drawings from Gymco and delivery of materials. One of these drawings was a template showing the locations of holes to be drilled in the glass façade so that a sign could be anchored to the building. The contract also included a provision requiring any changes to be made by written orders signed by authorized officers of the two companies. The total value of the contract was $108,169, $72,586 of which was for installation of the mirrored façade.

Gymco contracted with another subcontractor, Maltese Sign Company (Maltese), to supply the template needed by AGW. Although scheduled to arrive by February 27th, this template was not actually delivered until April 4th, five weeks later. By this time, it was impossible for AGW to finish the glass installation by its May 7th deadline. A meeting was held on April 18

---

* Honorable Joseph T. Sneed, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

to address the installation problems caused by the delay. At this meeting William Young, an employee of AGW, offered to explore the possibility of switching from mirrored glass to stainless steel, a material that could be furnished and installed more quickly. Young sent Gymco samples of the steel and shop drawings of the building with a stainless steel façade. No written agreement was executed by the parties documenting this change, nor was there any indication that Young's superiors at AGW were aware of it.

Throughout May, Young assured Gymco representatives that the steel had been ordered and would be installed soon. On May 31, 1985, Gymco's president, Blaine Leidy, was supervising the work on the job site. He had been told that AGW would install the steel that day. When no one from the company appeared at the job site, Leidy phoned AGW and spoke with its president, Robert Newbern. Newbern denied any knowledge of an agreement to install stainless steel, and when he learned that Young had agreed to this modification he terminated Young immediately. On June 3rd, Newbern informed Gymco that AGW would not install the stainless steel because it was more expensive than glass, and outside the scope of the company's expertise. AGW did continue to perform its other contract duties, however, until barred from the job site by Gymco in July 1985.

Gymco then contracted with Louis Hoffman, Inc., to supply and install the steel panels for the building façade. The contract price was $50,414 higher than the $72,586 allotted in the original contract with AGW. In March, 1986, Gymco filed a breach of contract action against AGW for this difference in price. AGW counterclaimed for damages it claims resulted when Gymco interfered and prevented it from completing its contract obligations.

The district court found that AGW was discharged from its duty to install the mirrored glass façade by the nonoccurrence of a condition precedent, *i.e.*, the delivery of the template by Maltese by February 27, 1985. The court rejected AGW's argument

that the failure to deliver the template in a timely manner amounted to a breach by Gymco. The court found that the remaining terms of the written contract were still valid, and that Young's actions created an "oral contract, as to one task only," the installation of the stainless steel instead of mirrored glass. Thus, the total contract was partially written and partially oral. The court held AGW had breached the agreement by refusing to install the steel, and awarded damages to Gymco. AGW appeals and we reverse.

## II.

## JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1332(a) (1982). This court's jurisdiction rests on § 1291.

## III.

## STANDARD OF REVIEW

The district court's interpretation of the original contract is a question of law which we review de novo. *Brewer v. Muscle Shoals Bd. of Educ.*, 790 F.2d 1515, 1519 (11th Cir.1986). The court's determination that Young had the authority to act as AGW's agent in modifying the original contract, or making a new contract for substitute performance, is reviewed under the clearly erroneous standard. *See Cavic v. Grand Bahama Dev. Co.*, 701 F.2d 879, 887 n. 4 (11th Cir.1983); *Bogue Electric Mfg. Co. v. Coconut Grove Bank*, 269 F.2d 1, 4 (5th Cir.1959).

## IV.

## ANALYSIS

A. *Breach of the Written Contract*

■ Despite the terms of the contract, the parties agree that AGW's duty to install a mirrored glass façade was discharged when it failed to receive the template on time. The delivery of the template was a condition precedent to AGW's duty to install the glass façade. Under Georgia law, the nonoccurrence of a condition precedent discharges the obligor's duty to

perform.[1] *See Mutual Benefit Health & Accident Ass'n v. Hulme*, 57 Ga.App. 876, 883, 197 S.E. 85, 89 (1938); *accord Merritt Hill Vineyards, Inc. v. Windy Heights Vineyard, Inc.*, 61 N.Y.2d 106, 112–13, 460 N.E.2d 1077, 1081, 472 N.Y.S.2d 592, 596 (1984); Restatement (Second) of Contracts § 225(2) (1979). Thus, AGW did not breach the written contract when it failed to install a glass façade.

 We disagree, however, with the district court's conclusion that Gymco, on its part, did not breach the agreement by failing to deliver the template in a timely fashion. Under the terms of the written contract, Gymco promised to deliver the template to AGW on time. Instead, it arrived over five weeks late. Gymco cannot escape responsibility for this delay by claiming that it delegated this duty to a third party. Gymco's decision to use a third party to produce the template does not relieve it of its obligation to AGW. *See Wood v. Brunswick Pulp & Paper Co.*, 119 Ga.App. 880, 884, 169 S.E.2d 403, 406 (1969) (Felton, C.J., concurring); 4 A. Corbin, *Corbin on Contracts* § 866, at 452 (1951). We find that Gymco did breach the contract by failing to insure delivery of the template by the date specified. *See Highland Inns Corp. v. American Landmark Corp.*, 650 S.W.2d 667, 673–74 (Mo.App. 1983); Restatement (Second) of Contracts § 225(3) (1979).

 Despite Gymco's breach, AGW continued to perform the other components of the contract not involving the building façade. Thus, AGW waived whatever right it may have had to terminate the contract after Gymco's breach. *See Pearson v. George*, 209 Ga. 938, 945–46, 77 S.E.2d 1, 7 (1953); *Precision Label Indus., Inc. v. Jones*, 185 Ga.App. 161, 163, 363 S.E.2d 605, 607 (1987). AGW, however, on the record before us, did not surrender its

cause of action for such damages as the delay in delivery of the template may have caused. The terms of the written contract remained in force, with the parties still obligated to perform the other specified duties. Therefore, AGW properly continued to perform its duties other than installing the façade until barred from the job site by Gymco in July 1985. By barring AGW from the construction site, Gymco may have breached the contract again depending on whether its actions were justified. We do not reach this issue, which is the subject of AGW's counterclaim, and remand this portion of the appeal to the district court for its reconsideration.

## B. *The Oral Agreement*

The heart of Gymco's case is that the parties orally agreed to use a stainless steel façade in lieu of a glass one and that AGW's failure to perform was a breach of the oral agreement that entitled Gymco to terminate the contract and sue for damages. Specifically, Gymco argues that on April 18, 1985, Young, an AGW salesman, acting as an agent of AGW, contracted to install a stainless steel façade. Gymco contends that Young's agreement was either a new contract that partially superseded the written agreement or an oral modification of the existing contract. AGW argues that Young lacked the authority to enter into a new oral contract and that if the agreement was an oral modification it was ineffective because it was not in writing.

The district court held that the oral agreement substituting stainless steel for mirrored glass was a new oral contract. Implicitly, it found that Young had the requisite authority to make the new contract. This implicit holding was in error. It is not supported by the facts and contradicts Georgia's law of agency. We hold that Young lacked the authority to enter

1. Because this is a diversity case, state substantive law will apply. *See Noonan South, Inc. v. Volusia County*, 841 F.2d 380, 382 (11th Cir. 1988). We apply the conflict of law rules of the forum state of Georgia. *See Klaxon Co. v. Stentor*, 313 U.S. 487, 491, 61 S.Ct. 1020, 1020, 85 L.Ed. 1477 (1941). Although the contract contained a provision adopting Maryland law, this issue was not developed before the district court, nor has any evidence been presented that Maryland law differs in any way from Georgia law. For this reason, we presume it to be the same as Georgia law and apply the latter. *See Abruzzion v. Farmers' Merchants' Bank*, 168 Ga. App. 639, 640, 309 S.E.2d 911, 913 (1983).

into a new contract obligating AGW to install the stainless steel. We further hold that, even if the oral agreement was only a modification of the contract, it was ineffective because it was not in writing.

### 1. Young's authority to make a new oral contract

AGW is not bound by Young's agreement without proof of an agency relationship. *See Scott v. Kelly–Springfield Tire Co.*, 33 Ga.App. 297, 297–98, 125 S.E. 773, 773 (1924). Gymco has the burden of proof on this issue. *See Carter v. Kim*, 157 Ga.App. 418, 418, 277 S.E.2d 776, 776 (1981). While Young was an AGW employee, this fact alone does not mean that Young was AGW's agent for all purposes. AGW was bound only by acts within the scope of Young's authority. Ga.Code Ann. § 10–6–51 (1981). This authority can be either actual or apparent.

■ No evidence was introduced from which the district court could conclude that Young had actual authority to pursue the stainless steel proposal. The record indicates that Young misled AGW by failing to disclose his proposal to the company, and that once the company learned of these efforts he was terminated and his efforts were repudiated. Further, Young was only a sales agent and not an officer of AGW. We conclude that Young did not have actual authority to make this oral contract on behalf of AGW.

Nonetheless, Gymco correctly argues that AGW is bound by the scope of Young's apparent authority. *See Holcomb v. Evans*, 176 Ga.App. 654, 655, 337 S.E.2d 435, 436 (1985). Apparent authority includes the authority to do what is usual and necessary for the accomplishment of the agent's objectives. *Arrington & Blount Ford, Inc. v. Jinks*, 154 Ga.App. 785, 787, 270 S.E.2d 27, 29 (1980). The parties dispute the extent of Young's involvement with this transaction. Gymco claims that Young was the sole representative of AGW on the project, and AGW argues that Young was merely a sales representative and supervisor.

■ The evidence in the record makes clear that Young's authority was limited. Gymco is bound by its actual or constructive knowledge as to the limits of Young's authority, and to this extent it is unable to assert a claim of apparent authority. *See Harper v. Liberty Nat'l Life Ins. Co.*, 645 F.Supp. 260, 263–64 (M.D.Ga.1986), *aff'd*, 819 F.2d 1149 (11th Cir.1987); *Atlanta Limousine Airport Servs., Inc. v. Rinker*, 160 Ga.App. 494, 496, 287 S.E.2d 395, 397–98 (1981). For example, while Young was present when Gymco's president signed the February 21 contract, he had no authority to execute the contract himself. It was Newbern, AGW's president, who had complete authority over the terms of the agreement between the parties. Newbern signed the contract on behalf of AGW. He also signed the pay orders submitted by AGW. It was Newbern, not Young, who added the conditions to AGW's performance under the contract. Further, Gymco should have known that Young's authority was the same as that of Gymco's own on-site representative who obtained approval for the change from its president. It was unreasonable for Gymco to assume that Young, as a sales representative, had unilateral authority to make such a significant modification in the terms of the written contract. This is particularly true given that Gymco knew that the stainless steel façade was more expensive than the glass façade and yet Young requested no increase in price to offset this added expense.

The district court made no express findings on the agency issue, but appears to have relied on Young's authority to sign the original price quotation from which the February 21 contract was partially drafted. This reliance is misplaced and contrary to the law. An agent who has authority to solicit orders or offer price quotes does not necessarily have the authority to modify existing contracts or unilaterally enter new ones. *See Kephart v. Gulf Refining Co.*, 59 Ga.App. 432, 1 S.E.2d 221, 221 (1939). This is especially true when an agent purports to agree to such a materially different obligation. AGW was a glass subcontractor; Young attempted to bind the company to supply stainless steel. Young's

authority to submit price quotes on behalf of AGW for glass work did not give him the actual or apparent authority to contract for the company to undertake such new and materially different duties of performance. The district court's conclusion to the contrary was clearly erroneous.

### 2. Young's authority to modify an existing contract

Alternatively, Gymco argues that Young's actions did not create a new oral contract, but rather modified the written contract. This does not advance Gymco's cause.

 The original contract included a provision requiring any modifications to be in writing and signed by authorized representatives of each company. For the reasons discussed *supra*, Young was not authorized to modify the contract between the parties. Further, no written order documenting the change in materials was ever prepared. Gymco had over six weeks to prepare a written change order, but did not do so, even though the parties followed this procedure for a less significant change in performance during this same period. We refuse to give effect to any oral modification in the face of this contract provision. *See Harper*, 645 F.Supp. at 264; *Worth v. Orkin Exterminating Co.*, 142 Ga.App. 59, 60, 234 S.E.2d 802, 803 (1977).

### V.

### CONCLUSION

In sum, we hold that Gymco breached the written contract by failing to insure that the template was delivered on time. As a result, AGW's failure to complete the mirror façade by the date specified in the contract was excused. However, because AGW did not terminate the contract immediately after Gymco's breach, AGW lost its right to terminate the entire contract unilaterally. Thus, the remaining obligations specified in the contract remained in full force. In light of these conclusions, we remand the case to the district court for reconsideration of AGW's counterclaim.

Finally, we hold that there was no oral contract between Gymco and AGW. Young lacked authority to enter into a new contract whereby AGW would have to install a stainless steel façade in place of the mirror façade. The evidence of the parties dealings makes clear that Gymco knew that Young only had limited authority. Alternatively, we also conclude that Young could not agree to modify the written contract orally. The written contract required all modifications to be in writing; therefore, the alleged oral modification could not be effective.

As a result of these findings we need not address the other grounds of error raised by AGW.

REVERSED and REMANDED.