The plaintiff, Deeco, Inc., appealed from a summary judgment dismissing Deeco's complaint against National Advertising Company for breach of contract.
Deeco operated an overnight camping facility, the "I-10 Kampground," in Mobile County. Deeco entered into a three-year lease with National in 1976 on a billboard. Shortly after the lease was renewed in September 1979, the billboard was destroyed by Hurricane Frederic. After the hurricane, a representative from National called on Deeco's president, William Coker, and told him that they needed to sign a new contract because the representative had used the wrong form for the September 1979 contract. On June 24, 1980, Coker signed the new form. The National representative told Coker that National would have the new billboard up in sixty days. National never erected the billboard. It did, however, begin sending Deeco monthly bills in January 1981, and continued to bill Deeco until April. Deeco refused to pay the bills.
National took the position that the June 24, 1980, document was a proposed contract which it never accepted and, therefore, never became bound by. The putative agreement was a standard form, drafted and supplied by National, which contained a clause on its back side under a heading marked "Acceptance of Contract," stating:
 "This contract shall be deemed to have been executed and its terms enforceable only upon the acceptance hereof by 3M National either by the commencement of performance or by formal written acceptance on the obverse side hereof. Following such acceptance, it shall be binding upon and shall inure to the benefit of the parties hereto and to their respective heirs, successors, administrators, and permitted assigns."
The front side of the form contained a space below the signature of the National representative which read:
"ACCEPTED
NATIONAL ADVERTISING COMPANY
BY____________________"
Deeco conceded that National never formally accepted the contract by signing in the space provided for formal acceptance. Nevertheless, it argued, National indicated its acceptance by its subsequent conduct. Specifically, Deeco pointed to the monthly bills from National, each of which indicated that the effective date of the parties' contract was "01-81." On two occasions National also sent notices regarding Deeco's failure to pay the bills. The second notice stated "we have not received payment on *Page 1262 
your advertising account according to the terms of our contract. . . ."
The plaintiff cited several cases which supported its position. In Three-Seventy Leasing Corp. v. Ampex Corp.,528 F.2d 993 (5th Cir. 1976), the buyer signed a document supplied by the seller which purported to be an agreement for the purchase of computer hardware. Although the seller never signed the document, the court ruled that a letter to the buyer from the seller confirming the delivery dates for the goods could reasonably be interpreted as an acceptance and it upheld the finding of the trial court that a valid contract existed.
In Empire Machinery Co. v. Litton Business Telephone Systems,115 Ariz. 568, 566 P.2d 1044 (1977), Empire's president signed an "Equipment Sales Agreement" for the purchase of telephone equipment. The document contained a "home office acceptance" clause stating that the agreement was to become binding "only upon approval, acceptance, and execution" by Litton's home office. Although the sales agreement was never signed by Litton, the court reversed the trial court's summary judgment in Litton's favor. The court rejected the notion that a seller which places itself in the posture of an offeree by including a "home office acceptance" clause in its sales contract forms must either execute the contract or substantially perform to become bound:
 "[I]n our opinion, the rule should be that if the offeree takes steps in furtherance of its contractual obligations which would lead a reasonable businessman to believe that the contract had been accepted, such conduct may, under the circumstances, constitute acceptance of the contract."
Empire Machinery, supra, 566 P.2d at 1050. The court pointed to letters from Litton to Mountain Bell Telephone Company advising it of the contract and requesting that Empire receive a new phone number, and advising it of Empire's purchase of electrical equipment (which was apparently adaptable to telephone equipment eventually purchased by Empire from another supplier) and of the cashing of Empire's down payment check (Litton later tendered a return of the down payment) as raising a question of fact as to Litton's acceptance.
The defendant relied primarily on Ingalls Steel Products Co.v. Foster Creighton Co., 226 Ala. 122, 145 So. 464 (1932). Ingalls submitted a proposal to a builder regarding steel to be supplied by Ingall which provided that when the document was "accepted" by the buyer and "approved" by an officer of Ingalls by signing the document it would become binding. Upon receipt of the document signed by the buyer, Ingalls's chief engineer sent a formal acknowledgment of the "order" stating that when Ingalls received the architectural plans and approved them shipment would be made promptly. After receiving the plans Ingalls wrote the buyer stating that it had withheld formal acceptance of the contract until receipt of the architectural plans in order to determine the exact amount of steel necessary to complete the order. The proposal had been made from freehand sketches and the final plans showed that more steel would be necessary than Ingalls originally anticipated, and, therefore, the cost would be higher than the original proposal had indicated. This court ruled that the negotiations did not culminate in a contract between the parties.
The existence vel non of a contract is determined by reference to the reasonable meaning of the parties' external and objective manifestations of mutual assent. Conduct of one party from which the other may reasonably draw the inference of assent to an agreement is effective as acceptance. Mayo v.Andress, 373 So.2d 620, 624 (Ala. 1979). Unlike the letters to the buyer in Ingalls, the communications by National to Deeco did not imply that the seller was awaiting further action or information from the buyer before acceptance. To the contrary, National sent bills referring to the "effective date" of the contract and sent a notice asking for payment "according to the terms of our contract." Those communications could easily have been construed by a reasonable buyer as objective manifestations of assent, especially *Page 1263 
in light of the absence in the record of any other communications from National to Deeco.
We are of the opinion that the bills and notices from Deeco referring to the existence of the putative contract, coupled with testimony by Coker that National's representative told him the billboard would be erected within ninety days, constituted evidence of an objective manifestation on the part of National to be bound by the agreement. There being at least a scintilla of evidence to support a finding that a contract was formed, we reverse the summary judgment dismissing the action.
REVERSED AND REMANDED.
TORBERT, C.J., and ALMON, EMBRY and ADAMS, JJ., concur.