852 So.2d 730 (2002)
COOK'S PEST CONTROL, INC., et al.
v.
Robert REBAR and Margo Rebar.
1010897.
Supreme Court of Alabama.
December 13, 2002.
Rehearing Denied January 13, 2003.
*732 Nicholas B. Roth and Heather L. Necklaus of Eyster, Key, Tubb, Weaver & Roth, Decatur, for appellants.
Thomas F. Campbell and Bert J. Miano of Campbell & Baker, L.L.P., Birmingham, for appellees.
STUART, Justice.
Cook's Pest Control, Inc., and three of its officers and/or managers (hereinafter referred to collectively as "Cook's Pest Control") are defendants in an action filed by Robert Rebar and Margo Rebar in the Jefferson Circuit Court. Cook's Pest Control appeals from an order of the Jefferson Circuit Court denying its motion to compel arbitration. We affirm.

Background
On August 28, 2000, Cook's Pest Control and the Rebars entered into a one-year renewable "Termite Control Agreement." Under the agreement, Cook's Pest Control was obligated to continue treating and inspecting the Rebars' home for termites during the term of the agreement, which, with certain limited exceptions, continued so long as the Rebars continued to pay the annual renewal fee. The agreement contained a mandatory, binding arbitration provision.
*733 When the initial term of the agreement was about to expire, Cook's Pest Control notified the Rebars and requested that they renew the agreement for another year by paying the renewal fee. On August 16, 2001, Mrs. Rebar submitted a payment to Cook's Pest Control; with the payment she included an insert entitled "Addendum to Customer Agreement" (hereinafter referred to as "the addendum"). That addendum provided, in part:
"Addendum to Customer Agreement:
"To: Cook's Pest Control, Inc....
"Please read this addendum to your Customer Agreement carefully as it explains changes to some of the terms shown in the Agreement. Keep this document with the original customer Agreement.
"....
"Arbitration.
Cook's [Pest Control] agrees that any prior amendment to the Customer Agreement shall be subject to written consent before arbitration is required. In the event that a dispute arises between Cook's [Pest Control] and Customer, Cook's [Pest Control] agrees to propose arbitration if so desired, estimate the cost thereof, and describe the process (venue, selection of arbitrator, etc.). Notwithstanding prior amendments, nothing herein shall limit Customer's right to seek court enforcement (including injunctive or class relief in appropriate cases) nor shall anything herein abrogate Customer's right to trial by jury. Arbitration shall not be required for any prior or future dealings between Cook's [Pest Control] and Customer.
"Future Amendments.
Cook's [Pest Control] agrees that any future amendments to the Customer Agreement shall be in writing and signed by Customer and [an] authorized representative of Cook's [Pest Control].
"Effective Date.
These changes shall be effective upon negotiation of this payment or the next service provided pursuant to the Customer Agreement, whichever occurs first.
"....
"Acceptance be [sic] Continued Use.
Continued honoring of this account by you acknowledges agreement to these terms. If you do not agree with all of the terms of this contract, as amended, you must immediately notify me of that fact."
The addendum proposed new terms for the agreement and notified Cook's Pest Control that continued service or negotiation of the renewal-payment check by Cook's Pest Control would constitute acceptance of those new terms. After it received the addendum, Cook's Pest Control negotiated the Rebars' check and continued to perform termite inspections and services at the Rebars' home.
On August 30, 2001, the Rebars filed this action against Cook's Pest Control. The Rebars alleged fraud, negligence, breach of contract, breach of warranty, breach of duty, unjust enrichment, breach of the duty to warn, negligent training, supervision and retention of employees, and bad-faith failure to pay and bad-faith failure to investigate a claim.[1] Those *734 claims were based upon Cook's Pest Control's alleged failure to treat and control a termite infestation in the Rebars' home and to repair the damage to the home caused by the termites.
Cook's Pest Control moved to compel arbitration of the Rebars' claims. In support of its motion, Cook's Pest Control relied upon the arbitration provision contained in the agreement; Cook's Pest Control also submitted the affidavit testimony of the president of the company, who testified regarding the effect of Cook's Pest Control's business on interstate commerce.
The Rebars opposed the motion to compel arbitration, asserting, among other things, that a binding, mandatory arbitration agreement no longer existed.[2] The Rebars asserted that a binding, mandatory arbitration agreement no longer existed because the agreement between the parties had been modified when it was renewed in August 2001. The Rebars presented to the trial court a copy of the addendum and a copy of the canceled check they had written to Cook's Pest Control in payment of their renewal fee, which Cook's Pest Control had accepted and negotiated. The Rebars also submitted the affidavit of Mrs. Rebar, who testified that after Cook's Pest Control had received the addendum and had negotiated the check for the renewal fee, Cook's Pest Control inspected the Rebars' home.
On December 18, 2001, the trial court denied Cook's Pest Control's motion to compel arbitration. In its order, the trial court stated:
"The Motion to Compel Arbitration, filed by [Cook's Pest Control] on October 10, 2001, came before the Court on December 7, 2001 for hearing and was taken under advisement.
"The Motion is submitted upon the Motion, together with the `Subterranean Termite Control Agreement Sentricon Colony Elimination System' dated 8/28/00, which was in effect for one year. [The Rebars] have filed, on November 14, 2001, Plaintiff's Opposition to Cook's [Pest Control's] Motion to Compel Arbitration with documents attached thereto, which includes Exhibits 1, 2, A, B, C, D, E, and 3.
"The contract that was entered into on August 28, 2000, which is Exhibit B to Plaintiff's Opposition to Cook's [Pest Control's] Motion to Compel Arbitration, was for a period of one year and contained an arbitration clause. Thereafter, the same expired and the [Rebars] paid for a termite bond and at the same time made an addendum to the termite agreement, which is Exhibit C to Plaintiff's Opposition to Cook's [Pest Control's] Motion to Compel Arbitration. In said Exhibit C, under `Arbitration,' the language reads as follows:
"`Cook's [Pest Control] agrees that any prior amendment to the Customer Agreement shall be subject to written consent before arbitration is required. In the event that a dispute arises between Cook's [Pest Control] and Customer, Cook's [Pest Control] agrees to propose arbitration is [sic] so desired, estimate the cost thereof, and describe the process (venue, selection of arbitrator, etc.). Notwithstanding prior amendments, nothing *735 herein shall limit Customer's right to seek court enforcement (including injunctive or class relief in appropriate cases) nor shall anything herein abrogate Customer's right to trial by jury. Arbitration shall not be required for any prior or future dealings between Cook's [Pest Control] and Customer.'
"The defendant Cook's Pest Control, Inc. accepted said premium with said addendum by the plaintiffs. However, at this hearing, Cook's [Pest Control] does not wish to be bound by the provisions of the addendum made by the [Rebars].
"Cook's [Pest Control] could have canceled the termite agreement, but no cancellation was made. The addendum provides in effect that arbitration is not enforceable and is not required unless [the Rebars] agree thereto, and nothing shall limit the right of [the Rebars] to seek court enforcement nor shall anything herein abrogate the [Rebars'] right to trial by jury. (The provision actually reads `customer'; and in this case, [the Rebars] are customers.)
"The agreement having expired, and the defendants Cook's Pest Control, Inc. having accepted the premium, changing the terms of the prior agreement, which had expired, the said defendant Cook's Pest Control, Inc. became bound by the provisions provided in the addendum, which is [the Rebars'] Exhibit C to Plaintiff's Opposition to Cook's [Pest Control's] Motion to Compel Arbitration.
"Therefore, the Motion to Compel Arbitration, filed by the defendants is OVERRULED AND DENIED."
Cook's Pest Control filed a "motion to reconsider"; that motion was denied by operation of law.
Cook's Pest Control appeals, asserting the following arguments:
"I. The trial court erred by incorrectly assuming that Cook's [Pest Control] could have cancelled its ongoing obligations of the termite agreement with [the Rebars] and in interpreting Cook's [Pest Control's] continued inspection and retreatment of the [Rebars'] home as acceptance of the [Rebars] attempted unilateral modification of the contract.
"II. The trial court erred because, as a matter of law, Cook's [Pest Control] is entitled to arbitration.
"A. The trial court erred in failing to recognize that there was no previous agreement between the parties which contemplate[d] future amendments to the contract.
"B. The trial court erred in failing to take into account that an at-will, unilateral business relationship cannot be fundamentally altered by the customer, as the promisor."

Analysis
Cook's Pest Control argues that the trial court incorrectly found that it accepted the terms included in the addendum by continuing to inspect and treat the Rebars' home after it received the addendum and negotiated the Rebars' check for the renewal fee. Cook's Pest Control argues that, under the terms of the agreement, it was already obligated to continue inspecting and treating the Rebars' home. Cook's Pest Control also argues that the addendum was an improper attempt to *736 unilaterally modify an existing contract. We reject those arguments.
First, we reject Cook's Pest Control's argument that the Rebars were attempting unilaterally to modify an existing contract.[3] We note that the parties' original agreement was due to expire on August 28, 2001; Cook's Pest Control had already sent the Rebars a notice of this expiration and had requested that the Rebars renew the agreement by submitting the annual renewal fee.
Upon receiving notice that the agreement was up for renewal, the Rebars responded to Cook's Pest Control's offer to renew that contract with an offer of their own to renew the contract but on substantially different terms. This response gave rise to a counteroffer or a conditional acceptance by the Rebars:
"If the purported acceptance attempts to restate the terms of the offer, such restatement must be accurate in every material respect. It is not a variation if the offeree merely puts into words that which was already reasonably implied in the terms of the offer. But the very form of words used by the offeror is material if the offeror so intended and so indicated in the offer. An acceptance using a different form makes no contract. A variation in the substance of the offered terms is material, even though the variation is slight...."
"In the process of negotiation concerning a specific subject matter, there may be offers and counter-offers. One party proposes an agreement on stated terms; the other replies proposing an agreement on terms that are different. Such a counter-proposal is not identical with a rejection of the first offer, although it may have a similar legal operation in part. In order to deserve the name `counter-offer,' it must be so expressed as to be legally operative as an offer to the party making the prior proposal. It is not a counter-offer unless it is itself an offer, fully complying with all the requirements that have been previously discussed. This does not mean that all of its terms must be fully expressed in a single communication. Often they can be determined only by reference to many previous communications between the two parties. In this, a counter-offer differs in no respect from original offers. But there is no counter-offer, and no power of acceptance in the other party, unless there is a definite expression of willingness to contract on definitely ascertainable terms.
"If the party who made the prior offer properly expresses assent to the terms of the counter-offer, a contract is thereby made on those terms. The fact that the prior offer became inoperative is now immaterial and the terms of that offer are also immaterial except in so far as they are incorporated by reference in the counter-offer itself. Very frequently, they must be adverted to in order to determine what the counter-offer is. Often, the acceptance of a counter-offer is evidenced by the action of the offeree *737 in proceeding with performance rather than by words.
"... If the original offeror proceeds with performance in consequence of the counter-offer, there can be no successful action for breach of the terms originally proposed.
"The terms `counter-offer' and `conditional acceptance' are really no more than different forms of describing the same thing. They are the same in legal operation. Whether the word `offer' is used or not, a communication that expresses an acceptance of a previous offer on certain conditions or with specified variations empowers the original offeror to consummate the contract by an expression of assent to the new conditions and variations. That is exactly what a counter-offer does. Both alike, called by either name, terminate the power of acceptance of the previous offer."
Joseph M. Perillo, Corbin on Contracts § 3.32 at 478-80; § 3.35 (rev. ed.1993) (footnotes omitted).
In this case, the Rebars did not accept the terms proposed by Cook's Pest Control for renewal of the agreement but instead proposed terms for the renewal of that contract that were materially different from the terms of the agreement. See, e.g., Hall v. Integon Life Ins. Co., 454 So.2d 1338 (Ala.1984) (where a party to whom an offer is made changes the material terms of the offer, the response is deemed a counteroffer); Smith v. Chickamauga Cedar Co., 263 Ala. 245, 82 So.2d 200 (1955) (to be effective, the terms of the acceptance must be identical to the terms of the offer). The Rebars did not accept the arbitration provision proposed by Cook's Pest Control; they countered with an arbitration provision of their own.
In addition, the Rebars specified in the addendum the method by which Cook's Pest Control could signify its acceptance of those different terms. Had Cook's Pest Control wished to reject those terms, it could have refused to renew the agreement and forgone receipt of the Rebars' renewal check.
In response, Cook's Pest Control argues that it was obligated under the terms of the original agreement to continue servicing and treating the Rebars' home and that its continued service and treatment should not be regarded as acceptance of modifications to that agreement proposed by the addendum. We disagree.
Because the Rebars did not unconditionally accept the renewal contract as proposed by Cook's Pest Control but rather countered with terms that differed materially from those proposed by Cook's Pest Control, Cook's Pest Control had three options upon receipt of the addendum: (1) reject the Rebars' counteroffer and treat the agreement as terminated on August 28, 2001; (2) respond to the Rebars' counteroffer with a counteroffer of its own; or (3) accept the Rebars' counteroffer. Cook's Pest Control did not reject the counteroffer and treat the agreement as terminated; nor did it respond with its own counteroffer; rather, it deposited the Rebars' check and continued to inspect and treat the Rebars' homethe exact method specified by the Rebars for acceptance of the proposed modifications to the agreement. Those actions constituted acceptance of the Rebars' counteroffer.
Cook's Pest Control also argues that the addendum had no effect upon the renewal of the agreement because none of the employees in the office where the Rebars' payment was processed had the authority to enter into a contract on behalf of Cook's Pest Control. Thus, Cook's Pest Control argues, a properly authorized agent never assented to the modifications *738 proposed by the Rebars. Again, we disagree.
"It is well settled that whether parties have entered a contract is determined by reference to the reasonable meaning of the parties' external and objective actions." SGB Constr. Servs., Inc. v. Ray Sumlin Constr. Co., 644 So.2d 892, 895 (Ala.1994). See also Deeco, Inc. v. 3-M Co., 435 So.2d 1260, 1262 (Ala.1983) ("The existence vel non of a contract is determined by reference to the reasonable meaning of the parties' external and objective manifestations of mutual assent."). "Conduct of one party to a contract from which the other may reasonably draw an inference of assent to an agreement is effective as acceptance." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kilgore, 751 So.2d 8, 11 (Ala.1999). It is also well settled that an agent with actual or apparent authority may enter into a contract and bind his or her principal. See Lee v. YES of Russellville, Inc., 784 So.2d 1022 (Ala.2000). "Furthermore, a principal may vest his agent with apparent authority to perform an act by omission as well as commission, and such authority is implied where the principal passively permits the agent to appear to a third party to have the authority to act on his behalf." Treadwell Ford, Inc. v. Courtesy Auto Brokers, Inc., 426 So.2d 859, 861 (Ala.Civ.App.1983).
We note that if Cook's Pest Control wished to limit the authority of its employees to enter into contracts on its behalf, Cook's Pest Control, as the drafter of the original agreement, could have included such limiting language in the agreement. We find nothing in the agreement so limiting the authority of employees of Cook's Pest Control; we find nothing in the agreement requiring that a purported modification to the agreement be directed to any particular office of Cook's Pest Control, and we find nothing in the agreement stating that, to be effective, such a modification must be signed by a corporate officer or by a duly authorized representative of Cook's Pest Control.
Based upon the fact that Cook's Pest Control received the Rebars' proposed modifications to the agreement and that Cook's Pest Control, for some two months thereafter, acted in complete accordance with the Rebars' stated method of accepting those proposed modifications, we conclude that Cook's Pest Control's external and objective actions evidenced assent to the Rebars' proposed modifications.[4] It was reasonable for the Rebars to rely upon those actions as evidence indicating that Cook's Pest Control accepted their proposed changes to the agreement.
We agree with the trial court's conclusion, i.e., that, after receipt of the Rebars' addendum, Cook's Pest Control's continuing inspection and treatment of the Rebars' home and Cook's Pest Control's negotiation of the Rebars' check constituted acceptance of the terms contained in that addendum. Upon acceptance of those new terms, the binding arbitration provision contained in the agreement was no longer in effect. The parties' agreement regarding arbitration had been amended to state:
"Cook's [Pest Control] agrees that any prior amendment to the Customer Agreement shall be subject to written consent before arbitration is required. In the event that a dispute arises between Cook's [Pest Control] and Customer, Cook's [Pest Control] agrees to propose arbitration if so desired, estimate the cost thereof, and describe the *739 process (venue, selection of arbitrator, etc.). Notwithstanding prior amendments, nothing herein shall limit Customer's right to seek court enforcement (including injunctive or class relief in appropriate cases) nor shall anything herein abrogate Customer's right to trial by jury. Arbitration shall not be required for any prior or future dealings between Cook's [Pest Control] and Customer."
Because the Rebars oppose arbitration of their claims against Cook's Pest Control, the trial court properly denied Cook's Pest Control's motion to compel arbitration. Because of our resolution of this issue, we pretermit any discussion of the other issues raised by Cook's Pest Control on appeal.
AFFIRMED.
MOORE, C.J., and HOUSTON, J., concur.
JOHNSTONE and HARWOOD, JJ., concur specially.
LYONS, J., concurs in the result.[*]
SEE, BROWN, and WOODALL, JJ., dissent.
JOHNSTONE, Justice (concurring specially).
I concur in the main opinion. I write to discuss further why Cook's Pest Control fails in its argument that its employees who received the Rebars' addendum were without authority to accept it. This argument fails for two reasons.
First, Cook's Pest Control did not present the argument or even introduce the facts to support it until after the motion to compel arbitration had been submitted and decided. Not until Cook's Pest Control moved for reconsideration of the denial of the motion to compel arbitration did Cook's Pest Control submit the affidavit discussing the corporate personnel and procedures for receiving mail or did Cook's Pest Control assert want of authority in those personnel to accept the addendum. As Justice Harwood has correctly observed in his special writing, the trial court was not obligated to consider those tardy submissions. See Ryan's Family Steak Houses, Inc. v. Regelin, 735 So.2d 454, 457 n. 1 (Ala.1999) ("[A] motion to compel arbitration is analogous to a motion for summary judgment. Therefore, the propriety of a ruling on a motion to compel arbitration, like the propriety of a ruling on a summary-judgment motion, must be tested by reviewing the pleadings and evidence the trial court had before it when it ruled") (citations omitted); Ex parte City of Montgomery, 758 So.2d 565, 568 (Ala.1999) ("`In determining whether to grant or deny a motion for summary judgment, "[t]he trial court can consider only that material before it at the time of submission of the motion.... Any material filed after submission of the motion comes too late"'") (quoting Moore v. Glover, 501 So.2d 1187, 1189 (Ala.1986)); White v. Howie, 677 So.2d 752, 754 (Ala.Civ.App. 1995) ("A post-judgment motion may not be used to belatedly submit evidence in opposition to a motion for a summary judgment").
The second reason why this argument by Cook's Pest Control fails is substantive. A corporation is a person. See Art. XII, § 240, Alabama Constitution of 1901 ("All corporations shall have the right to sue, and shall be subject to be sued, in all courts in like cases as natural persons"); *740 § 10-2B-3.02, Ala.Code 1975 ("[E]very corporation ... has the same powers as an individual to do all things necessary or convenient to carry out its business and affairs"); Black's Law Dictionary 1162 (7th ed. 1999) (One definition of "person" is "[a]n entity (such as a corporation) that is recognized by law as having the rights and duties of a human being," and the definition of "artificial person" is "[a]n entity, such as a corporation, created by law and given certain legal rights and duties of a human being"); Metropolitan Life Ins. Co. v. Ward, 470 U.S. 869, 881 n. 9, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985) ("It is well established that a corporation is a `person' within the meaning of the Fourteenth Amendment"); Grosjean v. American Press Co., 297 U.S. 233, 244, 56 S.Ct. 444, 80 L.Ed. 660 (1936) ("[A] corporation is a `person' within the meaning of the equal protection and due process of law clauses"); Southern Ry. v. Greene, 216 U.S. 400, 412, 30 S.Ct. 287, 54 L.Ed. 536 (1910) ("That a corporation is a person, within the meaning of the 14th Amendment, is no longer open to discussion"); Pembina Consol. Silver Mining & Milling Co. v. Pennsylvania, 125 U.S. 181, 189, 8 S.Ct. 737, 31 L.Ed. 650 (1888) ("Under the designation of `person' there is no doubt that a private corporation is included"); Ex parte Rice, 259 Ala. 570, 575, 67 So.2d 825, 829 (1953) (" `Person' includes a corporation under the equal protection and due process clause of the Federal Constitution") (citations omitted); Boone v. State, 170 Ala. 57, 62, 54 So. 109, 110 (1911) ("The fourteenth amendment provides that no state shall `deny to any person within its jurisdiction the equal protection of the laws.' That corporations are persons within the meaning of this amendment is no longer open to discussion"); Smith v. Louisville & Nashville R.R., 75 Ala. 449, 451 (1883) ("And Circuit [Judge] Sawyer, in the same case, p. 33, said `In my judgment, the word "person" [in this cause of the 14th amendment] includes a private corporation.' ... This question, however, would seem to be settled by our own State Constitution, article 14, section 12, which ordains that `all corporations shall have the right to sue, and shall be subject to be sued, in all courts, in like cases as natural persons'"). Therefore Cook's Pest Control is a person. The Rebars mailed their addendum to this corporate person at the address this corporate person supplied. The Rebars did not select any individual, or direct or address their addendum to any individual, whose agency may be questioned. Even with the tardy submission and argument by Cook's Pest Control, this case would present no agency issue, and Cook's Pest Control cannot create an agency issue by arguing in effect that the corporate hand which received the addendum is not connected with the corporate brain.
HARWOOD, Justice (concurring specially).
I concur specially with the main opinion. In its motion to compel arbitration, filed on October 10, 2001, Cook's Pest Control sought to compel arbitration arguing that the "Subterranean Termite Control Agreement" contained an "Alternative Dispute Resolution Clause" and that the "[p]laintiff's complaint alleges a cause of action which is an arbitrable dispute under said agreement."
On November 14, 2001, the Rebars filed their motion in opposition to Cook's Pest Control's motion to compel arbitration. In that motion, the Rebars argued, in relevant part:
"There is no binding agreement to arbitrate between the parties because [Ms. Rebar] modified the terms of her contract with [Cook's Pest Control] to exclude the mandatory arbitration provision *741 in August of 2001. [Cook's Pest Control] accepted these new terms by cashing [the Rebars'] check which accompanied the modification and by continuing to perform its contractual obligations after the date of the modification."
The Rebars attached the affidavit of Margo Rebar to their opposition to Cook's Pest Control's motion to compel arbitration. Her affidavit stated, in relevant part:
"In or about, August of 2001, I enclosed an insert along with my payment to Cook's [Pest Control] for provision of termite services, providing new terms for my agreement with Cook's [Pest Control] as well as notice to Cook's [Pest Control] that if it continued to honor my account for termite services,... Cook's [Pest Control] agreed to those new terms. Cook's received my payment, and the enclosed insert, as evidenced by Cook's [Pest Control's] cashing of my check attached as Exhibit D. Additionally, since accepting the above mentioned payment for services, and accompanying new terms of our agreement, Cook's [Pest Control] has continued to perform termite services at my home."
On December 7, 2001, Cook's Pest Control filed a memorandum in support of its motion to compel and argued: 1) that the scope of the arbitration clause encompassed the present dispute between the parties; 2) that the underlying transaction, as well as Cook's Pest Control's business activities, affected interstate commerce; 3) that the Rebars' attempt to modify the original underlying contract was unilateral in nature and, therefore, was not binding; and 4) that the Rebars' fraud-in-the-inducement argument was a matter to be determined by an arbitrator rather than the court. In support of its memorandum, Cook's Pest Control attached the affidavit of Jim Aycock, president of Cook's Pest Control, Inc., purporting to establish that Cook's Pest Control's ongoing business operations affected interstate commerce.
On December 7, 2001, the trial court held a hearing on the motion to compel arbitration; on December 18, 2001, it issued an order denying the motion to compel arbitration. The trial court's order stated, in pertinent part: "The defendant Cook's Pest Control, Inc.[,] accepted said premium with said addendum by the [Rebars]. However, at this hearing, Cook's [Pest Control] does not wish to be bound by the provisions of the addendum made by the [Rebars]." For all that appears in the record, Cook's Pest Control did not assert at the hearing that the agent who received the check from the Rebars did not have the authority to bind the company. Subsequently, on December 18, 2001, the trial court denied the motion to compel arbitration. On January 10, 2002, Cook's Pest Control filed a "motion to reconsider."
In its motion, Cook's Pest Control, for the first time, made the following argument:
"Cook's [Pest Control] seeks reconsideration because Cook's [Pest Control] has no record of ever receiving the so-called, `addendum'....
"If, as the [Rebars] assert, the addendum was mailed to Cook's [Pest Control] along with their August 16, 2001, quarterly payment, it would have been received by Erin Williams (hereinafter `Williams'), office manager for Cook's [Pest Control's] Birmingham North District Office. See Affidavit of Harold Ray Pinckard, attached hereto as Exhibit `A.' The Birmingham North District Office services approximately 13,000 customers, and approximately $260,000.00 in collections goes through the office each month. Id. As the office manager *742 for Cook's [Pest Control's] Birmingham North District Office, Williams opens 200 to 300 pieces of mail each day and posts each payment which comes through the office. Id. However, Williams has no authority to bind Cook's [Pest Control] or to change the terms of Cook's [Pest Control's] contracts with individual customers. Id. The Defendants should not be bound by the terms of the addendum because Cook's [Pest Control] has no record of ever receiving the [Rebars'] addendum, and the addendum was never received by any Cook's [Pest Control] employee having the authority to bind Cook's [Pest Control] or to alter contracts with Cook's [Pest Control's] customers."
Harold Ray Pinckard, a district manager of Cook's Pest Control, stated in his affidavit, in pertinent part:
"9. All payments received by the Birmingham North District Office are handled by Erin Williams (hereinafter `Williams'), the Office Administrator for the Birmingham North District Office.
"....
"11. Although the majority of payments are mailed by customers directly to the Birmingham North District Office, customers sometimes pay Cook's [Pest Control] technicians directly. These payments would also eventually go through and be posted by Williams.
"....
"13. Williams has no authority to bind Cook's [Pest Control] or to alter Cook's [Pest Control's] contracts with customers.
"14. Cook's [Pest Control] has no record of receiving the addendum purportedly submitted by the [Rebars]."
As we stated in Thrash v. Credit Acceptance Corp., 821 So.2d 968, 972 (Ala.2001):
"`Agency is generally a question of fact to be determined by the trier of fact. See Oliver v. Taylor, 394 So.2d 945 (Ala.1981). When a defendant's liability is to be based on agency, agency may not be presumed; rather, when on a motion for summary judgment a defendant has made a prima facie showing that there was no agency relationship, the party asserting agency has the burden of presenting substantial evidence of the alleged agency. Carlton v. Alabama Dairy Queen, Inc., 529 So.2d 921 (Ala. 1988); Wood v. Shell Oil Co., 495 So.2d 1034 (Ala.1986).'"
The law is well settled that a motion to compel arbitration is analogous to a motion for a summary judgment. See Lewis v. Conseco Fin. Corp., 848 So.2d 920 (Ala. 2002); Mostella v. N & N Motors, 840 So.2d 877 (Ala.2002); Brookfield Constr. Co. v. Van Wezel, 841 So.2d 220 (Ala.2002); Aronov Realty Brokerage, Inc. v. Morris, 838 So.2d 348 (Ala.2002).
Thus, Cook's Pest Control had the burden to make a prima facie showing that there was no agency relationship between it and Williams. However, as previously mentioned, Cook's Pest Control did not attempt to make such a showing until the defendants filed their postjudgment motion. "`[A] trial court has the discretion to consider a new legal argument in a post judgment motion, but is not required to do so. We will reverse only if the trial court abuses that discretion.'" Blackmon v. King Metals Co., 553 So.2d 105, 106 (Ala.1989)(quoting Green Tree Acceptance, Inc. v. Blalock, 525 So.2d 1366, 1369-70 (Ala.1988)). Because Cook's Pest Control offered no explanation or justification as to why it failed to raise the issue earlier in the proceedings, I am unable to conclude that the trial court abused its discretion by refusing to consider the new legal argument and the supporting evidence presented *743 to it by Cook's Pest Control's postjudgment motion.
SEE, Justice (dissenting).
I respectfully dissent.
Margo Rebar and Robert Rebar assert that along with their regular quarterly payment for termite protection, they sent Cook's Pest Control, Inc., a proposed "addendum" to their termite-control contract and that Cook's Pest Control accepted this addendum when it deposited the Rebars' check and continued to provide termite control service for the Rebars' home. I do not believe the Rebars have shown that Cook's Pest Control accepted the Rebars' proposed modification to the contract.
In 1987, while what was later to become the Rebars' house was under construction, Cook's Pest Control pretreated the house for termites and issued a termite bond on the property. After 1987, Cook's Pest Control continued to perform annual inspections of the house and to provide necessary treatments and re-treatments under the terms of the original termite bond. On April 12, 2000, coincident with the Rebars' purchase of the house, Cook's Pest Control provided the Rebars with a "Wood Infestation Inspection Report" certifying that there was evidence indicating that the house once had had a termite infestation, but that it was at that time free from any termite infestation.
Also in April 2000, the Rebars and Cook's Pest Control executed a termite control service contract entitled the "Subterranean Termite Control Agreement Liquid Barrier Treatment." Later, on August 28, 2000, Margo Rebar and Cook's Pest Control executed a termite contract entitled the "Subterranean Termite Control Agreement Sentricon Colony Elimination System." Both times, a Cook's Pest Control representative met with the Rebars at their home, presented the Rebars a complete contract, and both parties Cook's Pest Control and the Rebars signed the completed contract.
The terms of the second termite-control contract, the Sentricon agreement, were virtually identical to the terms of the earlier liquid-barrier agreement. A handwritten notation on the Sentricon. agreement indicated that it "converted" the liquid barrier agreement. On the Sentricon agreement, Margo Rebar initialed a provision entitled "Retreatment Guarantee"; that provision stipulated: "This Guarantee provides for the retreatment of the structure but does not provide for the repair of damage[ ] caused by wood destroying organisms." The Sentricon agreement also stated that, "[a]s an inducement to Cook's Pest Control, Inc. to enter into this agreement," the Rebars agreed to an arbitration clause.
On September 27, 2000, the Rebars discovered termites in their house. Upon further inspection in October 2000, the Rebars learned that the termite infestation was extensive and that termites had seriously damaged their house. The Rebars apparently notified Cook's Pest Control of the infestation and the resulting damage shortly after they discovered the termites. It is this termite damage that gave rise nearly a year later, after the Rebars' attempted modification of the contract, to the Rebars' action against Cook's Pest Control. The Rebars assert in their complaint that Cook's Pest Control has refused to pay for repairs to their house and has failed to eradicate termites from the house.
On August 16, 2001, almost a year after the Rebars discovered the termite infestation and damage, they submitted a payment to Cook's Pest Control's Birmingham office; they did not submit a notice of cancellation of the Sentricon agreement to *744 Cook's Pest Control at its Decatur, Alabama, corporate office.[5] The Rebars assert that they included with their payment an insert they had drafted that, they say, modified the terms of their agreement with Cook's Pest Control by removing the arbitration clause from the Sentricon agreement.[6] The Rebars attached to their motion in opposition to arbitration a copy of a payment coupon issued by Cook's Pest Control and dated October 31, 2001. The payment coupon indicates that Cook's Pest Control received the Rebars' August payment on August 17, 2001. The Rebars also introduced into evidence a copy of the front of their August check to Cook's Pest Control (a copy of the back of the check is not included in the record); it indicates that on August 21, 2001, the Rebars' bank processed their check to Cook's Pest Control.
Only nine days later, on August 30, 2001, the Rebars sued Cook's Pest Control, alleging fraud, negligence, breach of contract, breach of warranty, negligent misrepresentation, unjust enrichment, failure to warn, and negligent training, supervision and retention of employees.[7] On that same day, the Rebars also filed interrogatories, a request for production of documents, a request for admissions, and a motion for leave to propound additional interrogatories.
On October 10, 2001, Cook's Pest Control inspected the Rebars' house for termites and provided treatment. Also on October 10, 2001, Cook's Pest Control moved to compel arbitration. The trial *745 court denied Cook's Pest Control's motion, finding that Cook's Pest Control had agreed to the Rebars' modifications to the contract. Cook's Pest Control moved the trial court to reconsider its arbitration order. The motion seeking reconsideration was denied by operation of law.[8] On January 31, 2002, Cook's Pest Control moved the trial court to stay proceedings pending resolution of its appeal filed in this Court on January 28, 2002.
Cook's Pest Control makes the following argument on appeal:
"Including an insert which fundamentally alters a business relationship with a quarterly renewal payment in the absence of any prior understanding governing any such modifications is not the kind of notice contemplated by the court in SouthTrust [Bank v. Williams, 775 So.2d 184 (Ala.2000)]. The case before this Court is, therefore, clearly distinguishable, and Cook's [Pest Control] cannot be held to be bound by the unilateral, fundamental amendment to their relationship which the [Rebars'] `Addendum' seeks to accomplish."
(Cook's Pest Control's brief, p. 15.)
The Rebars cite no authority that supports their assertion that placing the addendum in an envelope along with a payment provided Cook's Pest Control with notice sufficient to modify the Rebars' termite-control contract with Cook's Pest Control. Nonetheless, the trial court found that when Cook's Pest Control accepted the Rebars' check and continued to treat the Rebars' home, it accepted the terms of the "addendum."
The Rebars assert that this Court should apply ordinary state-law principles of contract formation to resolve this dispute. They argue that they should be allowed to amend their contract with Cook's Pest Control by "any common law method of offering amendments." They also argue that this Court's holding in SouthTrust Bank v. Williams, 775 So.2d 184 (Ala.2000), is dispositive of this case. The majority of this Court agrees:
"We agree with the trial court's conclusion, i.e., that, after receipt of the Rebars' addendum, Cook's Pest Control's continuing inspection and treatment of the Rebars' home and Cook's Pest Control's negotiation of the Rebars' check constituted acceptance of the terms contained in that addendum."
852 So.2d at 738.
At issue is whether by processing the Rebars' payment the Cook's Pest Control employee who received the payment[9] gave Cook's Pest Control's assent to the addendum, and whether Cook's Pest Control's actions in continuing to treat the Rebars' home was assent to the addendum.
"Contracting parties are free to modify their contract by mutual assent."[10]Kinmon *746 v. J.P. King Auction Co., 290 Ala. 323, 325, 276 So.2d 569, 570 (1973). Generally, "[o]ne party cannot unilaterally alter the terms of a contract after the contract has been made. Both parties must mutually assent to a modification." Ex parte Amoco Fabrics & Fibers Co., 729 So.2d 336, 340 (Ala.1998) (citations omitted). However, in SouthTrust Bank this Court held that in a unilateral contract, that is, a contract in which one party makes an offer and "performance constitutes both acceptance of that offer and consideration," 775 So.2d at 188, a party may modify the contract by providing notice to the other party of the changed conditions, and indicating that continued performance constitutes acceptance. 775 So.2d at 190.[11]
The majority accepts the Rebars' claim that Erin Williams, the office administrator of Cook's Pest Control's Birmingham office, who deposited the Rebars' check on behalf of Cook's Pest Control, accepted the Rebars' addendum by depositing the check.[12] Margo Rebar claims that she placed the addendum in the envelope with her payment; the Rebars cite no authority for their assertion that doing so provided Cook's Pest Control with notice sufficient *747 to modify the Rebars' contract with Cook's Pest Control. An agent may contract on behalf of a principal when the agent has express, implied, or apparent authority to do so. Lawler Mobile Homes, Inc. v. Tarver, 492 So.2d 297, 304 (Ala.1986). The undisputed evidence in this case is that Erin Williams did not have express or implied authority to agree to the contract modification.
"`[T]he [a]pparent authority of an agent arises from the acts of the principal.'" Brannan & Guy, P.C. v. City of Montgomery, 828 So.2d 914, 922 (Ala.2002)(quoting Lawler Mobile Homes, Inc. v. Tarver, 492 So.2d at 304). It is unreasonable to assume that Williams had apparent authority to enter into the contract proposed by the Rebars. In Gymco Construction Co. v. Architectural Glass & Windows, Inc., 884 F.2d 1362 (11th Cir.1989), Architectural Glass & Windows ("AGW") contracted with Gymco to install mirrored glass panels on the facade of a new health club. When AGW had difficulty meeting a deadline, William Young, an AGW employee, agreed with Gymco to modify the terms of the contract and to install stainless steel panels instead of mirrored glass panels. The United States Court of Appeals for the Eleventh Circuit held that AGW was bound by any promise Young had made to Gymco that was within the scope of Young's apparent authority, but that Young's apparent authority, as AGW's agent, extended only "to do what is usual and necessary for the accomplishment of the agent's objectives." 884 F.2d at 1366. The court held, "It was unreasonable for Gymco to assume that Young, as a sales representative, had unilateral authority to make such a significant modification in the terms of the written contract." 884 F.2d at 1366. The court concluded that "Young's authority to submit price quotes on behalf of AGW for glass work did not give him the actual or apparent authority to contract for the company to undertake such new and materially different duties of performance." 884 F.2d at 1366-67. In this case, the Rebars analogously have the burden to prove that Williams had the actual or apparent authority to contract on behalf of Cook's Pest Control, and that contracting was within the scope of Williams's usual duties of depositing checks and crediting payments.
Implicitly overruling that principle, the majority concludes that the actual or apparent authority of any Cook's Pest Control employee to accept the Rebars' offer by carrying out his usual duties is inherent in being a Cook's Pest Control employee, unless Cook's Pest Control somehow explicitly disclaims such authority. The majority explains that Erin Williams, the office administrator of the Birmingham office, necessarily had the authority to bind Cook's Pest Control unless Cook's Pest Control had taken express action to limit that authority:
"We note that if Cook's Pest Control wished to limit the authority of its employees to enter into contracts on its behalf, Cook's Pest Control, as the drafter of the original agreement, could have included such limiting language in the agreement. We find nothing in the agreement so limiting the authority of employees of Cook's Pest Control; we find nothing in the agreement requiring that a purported modification to the agreement be directed to any particular office of Cook's Pest Control, and we find nothing in the agreement stating that, to be effective, such a modification must be signed by a corporate officer or by a duly authorized representative of Cook's Pest Control."
852 So.2d at 738.
The majority's holding describing the measures Cook's Pest Control could have taken to protect itself is, however, contradicted by the contract law of this State and *748 by the majority's holding in this case. The general rule is that parties may orally modify any contract term. See, e.g., Duncan v. Rossuck, 621 So.2d 1313, 1315 (Ala.1993)("[U]nder Alabama law a written agreement may be modified by a subsequent oral agreement of the parties, unless some statutory provision provides otherwise.... This is so even where the contract contains a requirement that all modifications be in writing."); Watson v. McGee, 348 So.2d 461, 464 (Ala.1977)("Parties to a written contract may by mutual consent without other consideration orally alter, modify or rescind the contract.").
Insofar as the majority finds that the Rebars' addendum is a counteroffer to the offer made by Cook's Pest Control to continue in force the termite-control contract, the acceptance clause of the addendum, as written, would have nullified any of the prophylactic measures suggested by the majority, because the addendum's acceptance clause describes specific actions that Cook's Pest Control could take to signify its acceptance of the terms of the addendum. Presumably, as the majority holds, in any case where Cook's Pest Control had taken the actions specified in the acceptance clause, for example, continued performance, it would have signaled its assent to the terms of the addendumand it would have done so notwithstanding any contrary language in a prior agreement.[13]
The majority's holding also conflicts with this Court's holdings in SouthTrust Bank, 775 So.2d 184, and in Brannan & Guy, 828 So.2d 914.[14] In SouthTrust Bank, SouthTrust Bank sent notice to checking-account holders that it had *749 amended the account agreement to incorporate an arbitration clause. 775 So.2d at 185-87. This Court found that the checking-account agreement was a unilateral contract and that SouthTrust Bank could modify the contract by sending notice to the other party that the account holder's subsequent use of the account would signal acceptance of the new terms. Id. at 190-91. In SouthTrust Bank, the bank provided notice to the principal, the account holdernot simply to an agent authorized for a limited purposeabout the terms South Trust Bank had modified in the contract.
In Brannan & Guy, this Court applied the rule from the SouthTrust Bank case to a case in which a unilateral contract was presented to an agent. In Brannan & Guy, the City of Montgomery announced that it was reducing the rate at which it would reimburse outside counsel for legal work done on behalf of the city to $90 per hour. 828 So.2d at 917. An attorney thereafter notified the city that he was withdrawing as counsel from all cases in which he represented the city. 828 So.2d at 922. Three clients, all former city employees, asked the attorney to continue as their counsel because of what the clients perceived as conflicts with the incumbent city administration. 828 So.2d at 922. The attorney consented. He sent notice to the Montgomery city attorney, who had signed the notification of the reduced hourly rate, that he would continue to represent those three clients as individuals at the rate of $175 per hour. 828 So.2d at 922. The attorney then performed work for the clients and submitted bills based on the $175 hourly rate. The city paid those bills as submitted at the $175 hourly rate. 828 So.2d at 923.
The City of Montgomery's risk manager eventually discovered that the city was reimbursing the attorney at the rate of $175 per hour. 828 So.2d at 924. The risk manager applied the $90 rate to the attorney's bills and sought recovery of the "overcharges" from the attorney. The city argued that the city attorney did not have the authority to agree to the $175 hourly rate and that he had never brought the private attorney's "unilateral contract" to the attention of the mayor, who was the only person who had the authority to authorize payment at a rate above $90 per hour. This Court held that "`[r]atification by the alleged principal cannot be found where there is no evidence that he or she had any knowledge of the act purportedly ratified.'" 828 So.2d at 924 (quoting Watson v. Auto-Owners Ins. Co., 599 So.2d 1133, 1136 (Ala.1992)). This Court then concluded, "that the City did not have knowledge of [the city attorney's] purported acceptance or approval of [the attorney's] hourly rate and therefore did not ratify that rate through ... payment of the six bills submitted by the firm before [the risk manager] became aware that the firm was billing at an unauthorized rate." 828 So.2d at 924.
Brannan & Guy is dispositive of the present case. The attorney in that case presented his unilateral contract to the City of Montgomery. The city paid him at the rate specified in the contract. That behavior, to the attorney, could objectively manifest "acceptance." Nonetheless, this Court held that the city's behavior could not have manifested acceptance because the principal had insufficient notice of the *750 existence of the modified contract. In comparison, even assuming that Cook's Pest Control's deposit of the Rebars' check would constitute "acceptance" of the addendum if proper notice had been given (and I do not accept that it would[15]), the Rebars have not demonstrated that the actions of the Cook's Pest Control employee who deposited the check gave Cook's Pest Control proper notice of the addendum.[16]
It is undisputed that Erin Williams, the office administrator of Cook's Pest Control's Birmingham office and the employee who deposited the check, does not have actual authority to enter into contracts on behalf of Cook's Pest Control. The Rebars have provided no evidence indicating that Cook's Pest Control ever conducted its business in such a way as to bestow apparent authority on the office administrator of its Birmingham office to accept modifications to termite-control service contracts.[17]
A contract modification requires an offer and an acceptance of that modification.
*751 The Rebars have not demonstrated that Cook's Pest Control accepted the Rebars' proposed contract modification. I would, therefore, reverse the trial court's order denying Cook's Pest Control's motion to compel arbitration.
I must respectfully dissent.
NOTES
[1] The bad-faith-failure-to-pay and bad-faith-failure-to-investigate allegations were actually added by an amended complaint filed after August 30, 2001.
[2] The Rebars also asserted in the trial court that Cook's Pest Control had not argued or established that the transaction at issue had a substantial effect on interstate commerce, that they were fraudulently induced to sign the original arbitration provision, and that the agreement itself was unconscionable. The parties do not argue these issues on appeal.
[3] We do not address the issue whether a party may unilaterally modify an existing contract.
[4] Cook's Pest Control first indicated that it did not wish to be bound by the provisions contained in the Rebars' addendum by filing a motion to compel arbitration with the trial court on October 10, 2001.
[*] Although Justice Lyons did not sit for oral argument of this case, he has listened to the tape of oral argument.
[5] The letterhead on which the Sentricon agreement is printed lists "Corporate Office  1741 Fifth Avenue, SE  Decatur, AL 35601" as Cook's Pest Control's address; at the bottom of the "Subterranean Termite Control Sentricon Retreatment Guarantee" Cook's Pest Control's address is also listed as: "Cook's Pest Control, Inc.  Corporate Office  1741 Fifth Avenue  Decatur, Alabama 35601." Neither document lists the Birmingham address to which the Rebars sent their proposed contract modification.
[6] Cook's Pest Control argued before the trial court that it never received the "addendum." It does not make that argument on appeal. Harold Pinckard's affidavit, submitted to the trial court in support of Cook's Pest Control's "Motion to Reconsider," states: "Cook's [Pest Control] has no record of receiving the `addendum' purportedly submitted by the [Rebars]." The trial court took no ore tenus testimony in this case. The affidavits of Harold Pinckard and Margo Rebar provide conflicting evidence as to whether the Rebars sent the addendum or whether Cook's Pest Control received it. "[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question." Jim Burke Auto., Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala.1995)(opinion on denial of rehearing)(emphasis omitted).
[7] Count one of the complaint charges "State and common law fraud, including deceit and reckless, wanton or negligent conduct"; count two charges "violations of Alabama statutes (negligence per se) and breach of contract and warranty"; count three charges "breach of duty and negligence including negligent misrepresentation (by omission)"; count four charges "unjust enrichment"; count five charges "breach of duty to warn"; and count six charges "negligent training, supervision and retention."

The Rebars filed an amendment to their complaint on January 30, 2002, two days after Cook's Pest Control filed its appeal in this case. The trial court's order, dated December 18, 2001, denying Cook's Pest Control's motion to compel arbitration therefore considered only the six counts the Rebars alleged in their initial complaint.
In their amended complaint, the Rebars added a seventh count, charging "bad faith refusal to pay and/or bad faith failure to investigate." The Rebars make admissions in that countfor example that they "notified [Cook's Pest Control] of a claim in accordance with the terms of the contract" that might give Cook's Pest Control grounds upon which to argue that the trial court should reconsider its order denying arbitration.
[8] See Rule 59.1, Ala. R. Civ. P.
[9] Harold Pinckard's affidavit indicates that the Rebars' payment would have been handled by Erin Williams, the office administrator of Cook's Pest Control's Birmingham office. Pinckard also indicates in his affidavit that Williams had no authority to enter into contracts on Cook's Pest Control's behalf. The Rebars do not argue that Williams had actual authority to accept the contract modification.
[10] "A written contract may be modified by a subsequent agreement of the parties, provided the subsequent agreement contains all the requisites of a valid contract." Florence City-County Airport Comm'n v. Air Terminal Parking Co., 283 S.C. 337, 340, 322 S.E.2d 471, 473 (Ct.App.1984) (citations omitted). "The basic elements of a contract are an offer and an acceptance, consideration, and mutual assent to the essential terms of the agreement." Armstrong Bus. Servs., Inc. v. AmSouth Bank, 817 So.2d 665, 673 (Ala.2001). "It is well settled that whether parties have entered a contract is determined by reference to the reasonable meaning of the parties' external and objective actions." SGB Constr. Servs., Inc. v. Ray Sumlin Constr. Co., 644 So.2d 892, 895 (Ala.1994). See also Deeco, Inc. v. 3-M Co., 435 So.2d 1260, 1262 (Ala.1983)("The existence vel non of a contract is determined by reference to the reasonable meaning of the parties' external and objective manifestations of mutual assent."). "Conduct of one party to a contract from which the other may reasonably draw an inference of assent to an agreement is effective as acceptance." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kilgore, 751 So.2d 8, 11 (Ala.1999). However, "[w]hile the acts of a party may under some circumstances be such as to constitute an acceptance of a contract, surely such could not be the case unless the acting party is shown to have had knowledge of the contract." Birmingham Television Corp. v. Water Works, 292 Ala. 147, 154, 290 So.2d 636, 642 (1974)(emphasis added).
[11] The majority treats this case as one in which Cook's Pest Control extended to the Rebars an offer to renew their termite contract with Cook's Pest Control for a second year and in which the Rebars rejected Cook's Pest Control's offer by making a counteroffer to Cook's Pest Control. Cook's Pest Control made no such offer, because the Rebars had the right to continued service under the Subterranean Termite Control Sentricon Retreatment Guarantee:

"1. This Guarantee is effective for a period of one (1) year following the initial treatment. Thereafter the Guarantee may be continued on a year-to-year basis subject to the following terms.
"2. The Customer reserves the right to cancel this Guarantee at any time. Cook's [Pest Control] reserves the right to adjust the Annual Renewal Fee after the third year of this Guarantee and may cancel this Guarantee for any of the following reasons: [sale of the building, customer fails to fulfill his obligations under the guarantee or the agreement, natural disaster, change of law. Cook's Pest Control ceases to be an authorized Sentricon Operator.]"
The Sentricon agreement requires an annual payment of $463, billed quarterly. In August 2001, had the Rebars failed to pay the renewal fee, that failure would have triggered Cook's Pest Control's right to cancel; however, the Rebars made that payment and Cook's Pest Control did not exercise any right, if it had any, to cancel the Sentricon agreement and the guarantee.
[12] Given the course of dealing between the parties, the Rebars could not reasonably have assumed that Williams, the office administrator of Cook's Pest Control's Birmingham office, could accept their "counteroffer." On both of the previous occasions when the Rebars executed a contract with Cook's Pest Control, a Cook's Pest Control representative visited the Rebars, presented the Rebars with a contract, and both parties signed the contract. Moreover, the only address listed for Cook's Pest Control in the agreement or in the guarantee is that of Cook's Pest Control's Decatur corporate office, not the Birmingham office. See note 5.
[13] Consider the following hypothetical form agreement, which the majority necessarily must find enforceable:

ADDENDUM
1. Service Provider [for example, power company, cable company, Internet service provider, telephone company, insurer, lender, mortgage company] values Customer and makes this agreement in order to continue this valued relationship.
2. Service Provider agrees to provide Customer with unlimited free service from the date of this agreement until September 1, [future year].
3. Service Provider agrees that the person(s) who processes Customer's payment has full authority to enter into or to modify customer service agreements, and Service Provider agrees that negotiation of Customer's check or continuation of any service beyond the date of receipt of this addendum constitutes acceptance of this addendum.
4. Service Provider agrees to waive or void any clause in any existing or prior customer service agreement or in any other document that would serve to prevent this modification from coming into full force and effect, notwithstanding any language or provision to the contrary in any existing or prior customer service agreement or any other document.
[14] The majority's holding in this case severely limits or implicitly overrules this Court's holding in Brannan & Guy by holding here that where a principal is unaware of an agent's actions or of a contract offer, an agent who lacks actual or apparent authority to agree to a contract on the principal's behalf may nevertheless, by his or her actions, accept a contract on behalf of the principal.

Justice Johnstone offers in his special concurrence the rationale that Cook's Pest Control, the corporate person, necessarily accepted the addendum because the Rebars sent the addendum to the corporation itself, as a person or entity, and not merely to an agent of the corporation. (I note that the Rebars did not send the addendum to Cook's Pest Control's corporate office in Decatur, Alabama, which is identified as such in the Sentricon agreement and in the guarantee.) However, "A corporation is a legal entity, an artificial person, and can only act through agents." Townsend Ford, Inc. v. Auto-Owners Ins. Co., 656 So.2d 360, 363 (Ala.1995). "A corporation can act only through its servants, agents, or employees; but the acts of those servants, agents, or employees are not the acts of the corporation unless the servants, agents, or employees are acting for the corporation unless their acts are done in or about the duties assigned them or are accomplished within the line and scope of their duties." United States Fid. & Guar. Co. v. Russo Corp., 628 So.2d 486, 488 (Ala.1993). The addendum was in fact received not by "the corporation," but by an agent acting on behalf of the corporation; that agent had no authority in the line and scope of her duties to enter into contracts on behalf of the corporation. I also note that if the rationale of the concurring opinion is accepted, it clearly requires the overruling of Brannan & Guy, because in that case the law firm sent its bill for fees to the City of Montgomery, the corporate principal.
[15] Were this a contract for the sale of goods, it would be governed by § 7-2-207, Ala.Code 1975, Alabama's version of the Uniform Commercial Code ("UCC"). Section 7-2-207 reads, in pertinent part:

"(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
"(2) The additional terms are to be construed as proposals for addition to the contract."
Paragragh 3 in the "Purposes of Changes" in the Official Comment to this section states:
"Whether or not additional or different terms will become part of the agreement depends upon the provisions of subsection (2). If they are such as materially to alter the original bargain, they will not be included unless expressly agreed to by the other party."
In this case, were this a contract for the sale of goods, the Rebars' mailing of their check and payment coupon would constitute acceptance of Cook's Pest Control's offer to allow the Rebars to renew their termite-control contract. The addendum would materially alter the original proposal; therefore, it would be a proposal. The addendum would not take effect by Cook's Pest Control's depositing the Rebars' check or by Cook's Pest Control's continuing to provide service, because those actions are the very actions called for in performance of the original contract. The addendum could become a part of the contract only by Cook's Pest Control's express statement that it agreed to the Rebars' proposal.
Given the nature of this transaction, the rules governing the sale of goods offers guidance for resolution of this case. A Michigan court interpreting a similar Michigan UCC provision stated:
"Under section 2207, a party, except a merchant in the case of an immaterial term, may ignore additional terms, and proceed with performance of the agreement actually negotiated by the parties without fear that such performance will be interpreted by court or jury as acceptance of the other party's additional terms."
Power Press Sales Co. v. MSI Battle Creek Stamping, 238 Mich.App. 173, 182, 604 N.W.2d 772, 777 (1999).
[16] It is not at all clear how an office worker at Cook's Pest Control, once the Rebars' payment had been processed, would recognize the addendum as an amendment to the Rebars' contract. The addendum, a copy of which was attached as Exhibit C to the Rebars' answer to Cook's Pest Control's motion to compel arbitration, does not identify the Rebars or the particular agreement that it proposes to amend.
[17] The same analysis applies to the Rebars' argument that Cook's Pest Control's continued servicing of the Rebars' home constituted acceptance. Cook's Pest Control moved to compel arbitration in this case on October 10, 2001. The first service visit after the Rebars mailed the addendum to Cook's Pest Control took place on the same day, October 10, 2001. It would be absurd to suggest that while Cook's Pest Control's attorneys were in court asserting that the original Sentricon agreement entitled them to arbitrate this dispute, a service technician who likely never had seen the addendum could "accept" the Rebars "counteroffer" by treating the Rebars' home. Cook's Pest Control's motion to compel arbitration certainly constitutes an explicit rejection of the Rebars'"counteroffer" in the addendum. Even had Cook's Pest Control not moved for arbitration on October 10, 2001, it would be absurd on its face for the Rebars to assert that a Cook's Pest Control service technician who has not seen the addendum can "accept" the Rebars' offer. A party must have knowledge of a contract to assent to it. Birmingham Television Corp., 292 Ala. at 154, 290 So.2d at 642.